STATE OF NORTH CAROLINA v. JAMES EDD LIGON, JR.

No. COA09-747

(Filed 17 August 2010)

**1. Evidence— lay opinion testimony—content of pictures**

The trial court did not commit plain error in a sexual exploitation of a minor and taking indecent liberties with a child case in allowing lay opinion testimony regarding the content of photographs. Additionally, the trial court did not abuse its discretion in admitting a police incident report which stated that "photo's [sic] had juvenile's female private's [sic] showing." Such statement was a "shorthand statement of fact" previously deemed admissible by our Supreme Court.

**2. Evidence— lay opinion testimony—subjects of photographs**

The trial court did not commit reversible error in a sexual exploitation of a minor and taking indecent liberties with a child case by allowing testimony that the subjects of photographs taken by defendant did not know that they were being photographed because the statements did not bear on defendant's guilt or innocence.

**3. Evidence— lay opinion testimony—statement inconsistent with photographs**

The trial court did not err in a sexual exploitation of a minor and taking indecent liberties with a child case in admitting a detective's statement that defendant's explanation of why he took certain photographs was not consistent with what the photographs depicted.

**4. Evidence— hearsay—opened door—corroboration a fact— no prejudicial error**

The trial court did not commit plain error in a sexual exploitation of a minor and taking indecent liberties with a child case in allowing statements of the victim and the babysitter, neither of whom testified, into evidence. Defendant opened the door to allow the State to ask questions concerning the investigation into a scratch on the victim's leg and testimony regarding the victim's age merely corroborated a fact which the jury could have

deduced from other evidence. Even assuming *arguendo* that it was error to admit the statement, defendant could not demonstrate that a different result would have been reached absent the error.

**5. Appeal and Error— preservation of issues—motion to dismiss—failure to renew motion at close of all evidence**

Defendant did not renew his motion to dismiss the charge of taking indecent liberties with a child at the close of all the evidence and thus failed to preserve for appellate review his argument that the trial court erred in denying his motion to dismiss the charge.

**6. Sexual Offenses— first-degree sexual exploitation—insufficient evidence—motion to dismiss improperly denied**

The trial court erred by denying defendant's motion to dismiss the charge of first-degree sexual exploitation of a minor because the photographs taken by defendant of a minor child did not depict any sexual activity.

Appeal by defendant from judgment entered 26 June 2006 by Judge Zoro J. Guice, Jr. in Superior Court, Buncombe County. Heard in the Court of Appeals 8 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*Brian Michael Aus, for defendant-appellant.*

WYNN, Judge.

A person commits the offense of first degree sexual exploitation of a minor if he uses, employs, induces, coerces, encourages, or facilitates a minor to engage in sexual activity.[1] In the present case, Defendant James Edd Ligon, Jr., was convicted of first degree sexual exploitation of a minor and taking indecent liberties with a child based on several photographs he took of a minor female. Because these photographs do not meet the statutory definition of "sexual activity," we reverse Defendant's conviction for first degree sexual exploitation of a minor. We uphold, however, Defendant's conviction on the charge of taking indecent liberties with a child.

The police first became interested in Defendant when they were notified by employees at two separate businesses, Eckerd Drugs and

---

1. N.C. Gen. Stat. § 14-190.16 (2009).

Walgreens, that Defendant sought to have questionable photographs developed. Walgreens has a policy against printing photographs depicting full frontal nudity, sexual activity, pornography, or child pornography. Three of the photographs that Walgreens withheld from Defendant's order depicted the five-year-old child whom we refer to by the pseudo-initials, A.B.

One picture showed A.B., wearing shorts, sitting on a bench with her legs spread apart. Another picture showed the photographer's hand pulling away the leg of A.B.'s shorts revealing the crotch area underneath her pants. A third picture showed A.B. pulling up the leg of her own shorts with the fingers of her other hand in her crotch area. Due to the lighting in the photographs, it could not be determined whether the pictures showed A.B.'s private parts or underpants.

Detective Paula Barnes met with Defendant twice about the photographs. In an interview on 31 October 2005, Detective Barnes asked Defendant if he knew the girl depicted in the photographs. Defendant said he did, and that she lived just up the street from him. Defendant told Detective Barnes that the reason he had taken the photographs of A.B. was that his dog had jumped into her lap and had scratched her on her inner thigh. Defendant told Detective Barnes that he was concerned about lawsuits, and he wanted to document that there was no serious injury.

At some point, Detective Barnes confirmed with A.B. and with her parents that she had been scratched by Defendant's dog. The mother told Detective Barnes that the scratch was on the upper thigh; the child said it was on the lower thigh.

Detective Barnes asked Sergeant David Lee Romick, a detective sergeant with the Asheville Police Department, for his assistance in interviewing Defendant. On 17 November 2005, Sergeant Romick interviewed Defendant. He showed Defendant all of the photographs, including the photographs of A.B. that had been withheld by Walgreens. Defendant told Sergeant Romick that he had taken the photographs of A.B. because his dog had scratched her upper thigh, and he was trying to avoid a lawsuit.

Sergeant Romick then accused Defendant of taking the pictures of A.B. in order to stimulate himself. "You looked at these photographs, and you would masturbate while looking at these photographs of this little girl." Defendant began to cry and get upset. He did not disagree with Sergeant Romick. Defendant said he was sick

and needed help. He agreed to speak further with Detective Barnes about the photographs.

Defendant then told Detective Barnes that he used his other photographs, specifically pictures depicting a young woman in a red bikini, for masturbation material. Defendant indicated that he realized he had a problem, and he asked where he could go to get help. Detective Barnes then asked Defendant whether he would have used the photographs of A.B. for masturbation, had he been allowed to take them home. Defendant said he would have.

Defendant was tried on 20-23 June 2006 for taking indecent liberties with a child and first degree sexual exploitation of a minor. The State presented the evidence summarized above. Defendant introduced testimony from his neighbor, John Livingston, who stated that he saw A.B. playing with Defendant's dog on the day she was allegedly injured. Livingston testified that he heard her yell, and when he looked in her direction, he saw Defendant's dog in her lap while she was sitting on a bench. Livingston testified that he saw the dog jump away and A.B. looking on her leg as though "maybe something happened to her." Livingston went back inside, and did not see anyone taking pictures.

Defendant testified in his own defense. He admitted taking the photographs of A.B., but explained that the only reason he did so was to protect himself from lawsuits. Defendant testified that the pictures were not taken for any kind of sexual gratification. He admitted that he had masturbated to photographs similar to those of the female in the red bathing suit, but he denied having told Detective Barnes that he masturbated to those particular pictures. He said that when he told Detective Barnes he needed help, he meant he needed legal help with this case. Defendant also introduced the testimony of his mother, with whom he lives, three people from the congregation at his church, and his girlfriend.

Defendant's counsel moved to dismiss all charges at the close of the State's case. The trial court denied the motion to dismiss the charge of taking indecent liberties with a child, but reserved ruling on the charge of first degree sexual exploitation of a minor. Defense counsel presented evidence and, at the close of all the evidence, renewed his motion to dismiss the charge of sexual exploitation of a minor. The trial court denied the motion. The jury found Defendant guilty of taking indecent liberties with a child and first degree sexual exploitation of a minor.

On appeal, Defendant argues that the trial court erred by: (I) permitting various witnesses to give their opinions regarding the photographic evidence; (II) admitting hearsay statements of A.B. and her babysitter; (III) denying Defendant's motion to dismiss the charges due to insufficient evidence; and (IV) failing to instruct the jury on second-degree sexual exploitation of a minor.

I. Opinion Testimony Regarding the Photographs

[1] Defendant first argues that the trial court erred in allowing lay opinion testimony regarding the content of the pictures. Defendant concedes that he did not object at trial to the witnesses' characterization of the pictures. We therefore review the admission of this testimony for plain error. *See* N.C. R. App. P. 10(a)(4) (2010). "Under the plain error standard of review, defendant has the burden of showing: '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. Jones,* 358 N.C. 330, 346, 595 S.E.2d 124, 135 (2004) (quoting *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)), *cert. denied, Jones v. North Carolina,* 543 U.S. 1023, 160 L. Ed. 2d 500 (2004).

Defendant also argues that the trial court erred in admitting the Police Incident Report which states that "photo's [sic] had juvenile's female private's [sic] showing." Defendant objected at trial to the admission of the report. We therefore review the trial court's admission of this evidence for abuse of discretion. *State v. Buie,* 194 N.C. App. 725, 730, 671 S.E.2d 351, 354, *disc. rev. denied,* 363 N.C. 375, 679 S.E.2d 135 (2009). Defendant argues that each opinion as to what the photographs depicted was prejudicial because the jury would have determined that the pictures were not sexual in nature and consequently found Defendant not guilty.

There is nothing in the record indicating that any of the witnesses testified as an expert. The question is therefore whether the testimony regarding the contents of the photographs was admissible as lay opinion. Pursuant to the North Carolina Rules of Evidence, admissible lay opinion testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2009).

The record shows no evidence that the testifying witnesses perceived the behavior depicted in the photographs first-hand. Although

their opinions as to what the pictures showed were based on their perceptions of the *photographs*, the helpfulness of those opinions to the jury, which was in no worse position to evaluate the pictures, is questionable. We must determine the extent to which a witness may testify to his observations of a photograph that is equally available to the jury.[2]

In *State v. Fulton*, 299 N.C. 491, 263 S.E.2d 608 (1980), our Supreme Court considered the admissibility of an officer's opinion that the tread design shown in a photograph of shoe tracks found near a crime scene and the tread design on the bottom of defendant's tennis shoes were identical. The Court held that the admission of this testimony was error. *Id.* at 494, 263 S.E.2d at 610. Because no effort had been made to qualify the witness as an expert, it followed "that his opinion was inadmissible because the jury was apparently as well qualified as the witness to draw the inferences and conclusions from the facts that [the officer] expressed in his opinion." *Id.*[3]

We consider also *State v. Alexander*, 337 N.C. 182, 446 S.E.2d 83 (1994). Defendants in *Alexander*, alleged that "the trial court erred when it allowed Officer Frank to testify that a photograph shown to him at trial showed 'small openings that appeared to be buckshot' on Corey Hill's arm."[4] *Id.* at 190, 446 S.E.2d at 88. Defendants argued that the testimony constituted inadmissible lay opinion. *Id.* Our Supreme Court disagreed, holding the statements to be admissible as "short-hand statements of fact"—i.e. "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." *Id.* at 191, 446 S.E.2d at 88 (quoting *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), *vacated in part, Spaulding v. North Carolina*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976)). The Court in *Alexander* indi-

2. For a comprehensive review of how various jurisdictions determine the admissibility of testimony identifying the defendant in surveillance video footage, *see State v. Belk*, ___ N.C. App. ___, ___, 689 S.E.2d 439, 441-42 (2009), *disc. review denied*, 364 N.C. 129, ___ S.E.2d ___ (2010). However, regarding the case on review, we do not find these cases particularly relevant to the question of the admissibility of testimony interpreting images depicted in a still photograph where the identity of the defendant is not an issue.

3. The Court held this to be harmless error beyond a reasonable doubt because expert testimony was also offered to support the same conclusion. *Fulton*, 299 N.C. at 494-95, 263 S.E.2d at 610.

4. "Corey Hill had already testified that his wounds were caused by 'glass coming through the window from the shotgun blast.'" *Alexander*, 337 N.C. at 190, 446 S.E.2d at 88.

cated that the officer's interpretation of the photograph need not even be correct. *Id.* at 191, 446 S.E.2d at 89.

With these principles in mind, we turn to the facts of the case before us. Defendant argues that the following constitutes improper lay opinion testimony: statements that the photographs were "disturbing," "graphic," "of a sexual nature involving children," "objectionable," "concerning" to the witness, and that Defendant pulled away the minor's pant leg to get a "shot into the vaginal area." Defendant argues that such statements were not admissible as "shorthand statements of fact." Defendant argues that the photographic evidence was either sexual in nature or it was not, and no specialized training was necessary to discern what the pictures showed.

Defendant concedes that he failed to object to the testimony when it was offered. We are directed to no case finding prejudicial error in admitting testimony regarding the contents of a still photograph where the testimony was not objected to at trial. After careful review, we hold that the alleged error in allowing the State's witnesses to testify to their reactions to the photographs does not rise to the level of plain error.

Defendant did object to the admission of the Police Report, where Officer Driver wrote "photo's [sic] had juvenile's female private's [sic] showing." During *voir dire,* the following colloquy occurred between the prosecutor and Officer Driver:

Q: And did you record all of the information contained in this report? Is this your writing?

A: Yes, sir, it is.

Q: And the language that is contained on Page 2, [including "photo's had juvenile's female private's showing"], this is your language and your writing?

A: Yes, sir.

Q: Where did you obtain this information that you put on Page 2?

A: I wrote that as an overview of what—a baseline of information. I talked with—I just didn't know anything about this case. I walk in. I spent 15 or 10 minutes with the manager. I tried to fill it out as quickly as I can, get some basic information on there, and then pass that on to the appropriate investigator.

Q: So the language on Page 2, then, is how you personally viewed this incident?

A: At the time, yes, sir.

It is clear from this testimony that the officer's notation constituted a shorthand rendition of his observations. The report reflects the officer's instantaneous conclusions of the mind as to the appearance of the pictures. We therefore hold that the statement was a "shorthand statement of fact" such as has been deemed admissible by our Supreme Court. *See Alexander*, 337 N.C. at 191, 446 S.E.2d at 88.[5]

[2] Defendant next argues that testimony that the subjects of his pictures did not know that they were being photographed constituted improper lay opinion. Assuming this was error, still the error does not rise to the level of reversible error because Defendant cannot show any prejudice resulting from the jury's possible belief that the subjects of his pictures were unaware. Such statements do not bear on his guilt or innocence of the offenses charged. *See* N.C. Gen. Stat. § 14-202.1 (2009) (indecent liberties with a child); N.C. Gen. Stat. 14-190.16 (2009) (first degree sexual exploitation of a minor).

[3] Defendant next argues that the trial court erred in admitting Detective Barnes' statement that Defendant's explanation was not consistent with what the photographs depicted. Defendant infers from this that Detective Barnes testified that Defendant was lying. Defendant argues that an opinion as to the credibility of a witness is not helpful to the jury's determination of a fact in issue.

In support of this argument, Defendant cites *State v. Gobal*, 186 N.C. App. 308, 651 S.E.2d 279 (2007), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008). However, *Gobal* is factually distinguishable. In *Gobal*, the testimony at issue constituted improper vouching—i.e. one witness testified that another was telling the truth. *Gobal*, 186 N.C. App. at 318-19, 651 S.E.2d at 286. We there noted that "our Supreme Court has determined that when one witness 'vouch[es] for the veracity of another witness,' such testimony is an opinion which

---

5. We note that the cases the *Alexander* Court relied upon involved a witness's first-hand observations, whereas *Alexander* itself involved a witness's perception of a photograph. *See State v. Spaulding*, 288 N.C. at 411, 219 S.E.2d at 187; *State v. Williams*, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987). There is an inconsistency between *Fulton* and *Alexander*, since lay opinion testimony that would run afoul of the former could be rendered admissible by the latter. Nonetheless, we are bound by *Alexander's* extension of the "shorthand statements of fact" concept to witnesses' observations of photographs.

is not helpful to the jury's determination of a fact in issue and is therefore excluded by Rule 701." *Id.* at 318, 651 S.E.2d at 286 (quoting *State v. Robinson*, 355 N.C. 320, 335, 561 S.E.2d 245, 255, *cert. denied, Robinson v. North Carolina*, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002)). Defendant does not point to any such vouching in the present case.

We conclude that the trial court did not commit prejudicial error in permitting witnesses to testify regarding the photographic evidence.

## II. Hearsay Statements of A.B. and the Babysitter

[4] Defendant next argues that the trial court committed plain error in allowing statements of A.B. and the babysitter, neither of whom testified, into evidence. The statements in question were offered during the testimony of Detective Barnes and during cross-examination of Defendant. Detective Barnes testified that she learned from A.B. that she was five-years-old at the time of the incident. A.B. told Detective Barnes that she had been scratched by the dog on her shin. The babysitter told Detective Barnes that A.B. had been scratched on her inner thigh. No objections were made to Detective Barnes' testimony. The prosecutor asked Defendant more about these same statements on cross-examination.

Defendant now argues that the statements were hearsay offered to prove that A.B. was five-years-old, A.B. was scratched on the shin, and there was no legal reason for Defendant to have taken the photographs of A.B.'s upper thigh. Defendant asserts that these out-of-court statements were offered for their truth and met no exception to the prohibition on the admission of hearsay evidence. Defendant also argues that these unproven hearsay statements were used by the prosecutor to impeach the credibility of Defendant on cross-examination. Defendant maintains that the admission of these statements constituted prejudicial error.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2009). "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2009). Notwithstanding, "[t]he law 'wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself.' " *State v. Warren*, 347 N.C. 309, 317, 492 S.E.2d 609, 613 (1997) (quoting *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981)), *cert. denied, Warren v. North Carolina*, 523 U.S.

1109, 140 L. Ed. 2d 818 (1998). "Opening the door refers to the princi-
ple that where one party introduces evidence of a particular fact, the
opposing party is entitled to introduce evidence in explanation or
rebuttal thereof, even though the rebuttal evidence would be incom-
petent or irrelevant had it been offered initially." *State v. Sexton*, 336
N.C. 321, 360, 444 S.E.2d 879, 901, *cert. denied, Sexton v. North
Carolina*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994).

During defense counsel's cross-examination of Detective Barnes,
the following exchange took place:

Q: . . . But it's possible that he—that he's telling the truth about
the dog scratching the little girl?

A: It's a possibility.

Q: It's a possibility. And it's a possibility that you explored,
because you spoke to [A.B.] and you spoke to the parents,
and you confirmed that she had been scratched by the dog,
didn't you?

A: Yes, I did.

Q: So the child had been scratched by the dog, and he did take pic-
tures. And the story that he did tell you was an accurate story, at
least to the point that the child had been scratched by the dog.
Where the child had been scratched is somewhat in dispute, correct?

A: Correct.

Q: Everybody confirmed that the dog jumped up on the child and
scratched the child?

A: Correct.

. . . .

Q: And everything in your investigation verified those facts that
the child had been scratched. At the time of the photos, he went
and told the babysitter about it. Everything was verified, wasn't it?

A: Yes, it was.

During redirect examination of Detective Barnes, the State asked
more about the investigation of the scratch on A.B.'s leg. It was dur-
ing this latter examination that the testimony was offered that
Defendant now argues was impermissible hearsay. We hold
Defendant opened the door to allow the State to ask related questions

concerning the investigation into the scratch on A.B.'s leg. *See Warren*, 347 N.C. at 317, 492 S.E.2d at 613.

Defendant also argues that the trial court erred in admitting hearsay to establish A.B.'s age. Defendant did not object to this evidence when it was offered at trial. We are persuaded by the State's argument that there was no dispute below about A.B.'s age. Indeed, during defense counsel's direct examination of Defendant, counsel— referring to one of the photographs—asked: "This is you, James, taking a child that's five years old" and pulling aside her pants? Defendant replied, "Yes." Moreover, the jury could see for itself from the photographs that A.B. was not an adult when the pictures were taken. Thus, the testimony merely corroborated a fact which the jury could deduce from other evidence. Consequently, assuming *arguendo* that it was error to admit the statement, Defendant cannot demonstrate that a different result would have been reached absent the error. We hold that the trial court did not commit prejudicial error in admitting the contested hearsay statements of A.B. and her babysitter.

### III. Defendant's Motion to Dismiss

[5] In his next argument, Defendant acknowledges that by failing to renew his motion to dismiss the indecent liberties charge at the close of all the evidence, he has failed to preserve that claim of error. N.C. R. App. P. 10(a)(3) (2010). He requests this Court to suspend the Rules, pursuant to Rule 2, to address his claim that the trial court erred in denying his motion to dismiss the charge of taking indecent liberties with a child. We decline the invitation to suspend the Rules, and hold that Defendant has failed to preserve his claim of error regarding the charge of taking indecent liberties with a child. *See State v. Richardson*, 341 N.C. 658, 676-77, 462 S.E.2d 492, 504 (1995).

[6] We now turn to Defendant's argument that the trial court erred in denying his motion to dismiss the charge of first degree sexual exploitation of a minor. The test of the sufficiency of the evidence in a criminal case is whether "there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* On review, the evidence must be viewed in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67,

75-76, 430 S.E.2d 913, 918-19 (1993)), *cert. denied, Fritsch v. North Carolina*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

In North Carolina, first degree sexual exploitation of a minor is criminalized by N.C. Gen. Stat. § 14-190.16 which provides:

(a) Offense.—A person commits the offense of first degree sexual exploitation of a minor if, knowing the character or content of the material or performance, he:

(1) Uses, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity;

N.C. Gen. Stat. § 14-190.16 (2009). "Sexual activity" is elsewhere defined as "masturbation" or "touching in an act of apparent sexual stimulation or sexual abuse, of the clothed or unclothed genitals, pubic area, or buttocks of another person or the clothed or unclothed breasts of a human female." N.C. Gen. Stat. § 14-190.13(5)(a), (c) (2009).

Defendant argues that none of the photographs show any sexual activity. The State maintains that the picture depicting A.B. pulling up the leg of her shorts while the fingers of her other hand are in her pubic area is sufficient evidence for the jury to find a depiction of masturbation. The State argues further that, along with the other evidence, the jury could infer that defendant coerced or encouraged A.B. to touch herself for the purpose of producing a photograph depicting such activity. The State contends that the photograph of Defendant pulling aside A.B.'s shorts depicts "touching" that meets the statutory definition of sexual activity.

Simply stated, the pictures do not depict any sexual activity. North Carolina does not provide a statutory definition of masturbation. However, the dictionary defines the word as "[e]xcitation of the genital organs, usually to orgasm, by manual contact or means other than sexual intercourse." *The American Heritage Dictionary* 771 (2d College ed. 1985).[6] This definition is not satisfied by a photograph of A.B. merely having her hand in proximity to her crotch area. The other picture, depicting Defendant's hand, shows him touching A.B.'s shorts, not her body. This does not satisfy the definition of touching her "genitals, pubic area, or buttocks" as required by statute.

---

6. *Compare Young v. State*, 242 S.W.3d 192, 198, n.7 (Tex. App. 2007) (providing the The American Heritage Dictionary definition and the Webster's New Universal Unabridged Dictionary definition).

Regarding the picture of A.B. pulling aside her own shorts with her other hand near her crotch area, the State argues that,

> viewing this photograph[] along with the evidence that defendant took photographs of other female juveniles, including one in which he focused on the juvenile's vaginal area; masturbated to photographs he took of the young woman in the red bathing suit; began crying when Detective Barnes asked him if he would have masturbated to the photographs of [A.B.] had Walgreens given them to him; admitted to Detective Barnes that he would have masturbated to the photographs of [A.B.] had Walgreens given them to him; and admitted he was sick and needed help, gives rise to a reasonable inference that defendant induced, coerced, encouraged, or facilitated [A.B.] to touch herself for the purpose of producing a photograph depicting such activity.

It is obvious that by compounding the prejudice attendant upon each of these unsavory facts the State could accumulate enough disgust to convince a jury that Defendant had committed some moral offense. We cannot overlook, however, the unpleasant fact that none of these allegations points to any illegal behavior. Defendant's use of his photographs for the purpose of masturbation does not prove that the photographs themselves depict masturbation, or that the behavior can be inferred from them. Viewing the evidence in the light most favorable to the State, we hold that the pictures cannot support a conviction of first degree sexual exploitation of a minor.

This result should not be misinterpreted as a declaration of Defendant's innocence. We are quite disturbed by the picture of Defendant pulling away the leg of A.B.'s shorts to photograph the area revealed. But we cannot ignore that the State failed to procure the testimony of the alleged victim in this case. Indeed, the State presented no evidence that Defendant had done anything to satisfy the statutory definition of prohibited sexual conduct. See N.C. Gen. Stat. § 14-190.16 (2009). We are barred from reading the statute broadly enough to prohibit Defendant's conduct because we are compelled to construe this statute strictly. See State v. Hernandez, 188 N.C. App. 193, 202, 655 S.E.2d 426, 432 (2008). If our legislature had intended to criminalize such behavior as Defendant's, it certainly could have done so.

Because we hold that the trial court erred in denying Defendant's motion to dismiss the charge of first degree sexual exploitation of a minor, we need not reach Defendant's argument that the trial court

erred in not instructing the jury on second-20-degree sexual exploitation of a minor.

In sum, we uphold Defendant's conviction for taking indecent liberties with a child. However, we reverse Defendant's conviction on the charge of first degree sexual exploitation of a minor.

No error in part, reversed in part, and remanded for resentencing.

Judges CALABRIA and BEASLEY concur.

Judge WYNN concurred in this opinion prior to 9 August 2010.