DAVIS, Judge.
 

 *291
 
 In this appeal, we address whether (1) an indictment for embezzlement was legally sufficient where it failed to expressly allege fraudulent intent and did not specify the acts allegedly constituting embezzlement; (2) the trial court committed plain error by instructing the jury on an element of embezzlement not supported by the evidence; and (3) the trial court plainly erred by allowing testimony concerning the defendant's post-arrest silence. After a thorough review of the record and applicable law, we conclude that the defendant received a fair trial free from prejudicial error.
 

 Factual and Procedural Background
 

 The State introduced evidence at trial tending to show the following facts: In 2013, Marjorie Hetzel owned Interstate All Battery Center franchises in Danville, Virginia and Greensboro, North Carolina. In November 2013, Hetzel hired Jala Namreh Booker ("Defendant") as
 
 *292
 
 the office manager for the Greensboro franchise. As part of her duties as office manager, Defendant was responsible for the daily reports generated from the register, managing accounts payable and receivable, and occasionally assisting with sales. None of the store's other employees were responsible for bookkeeping or "keeping track of the money" in any capacity.
 

 At the close of business each day, Defendant was required to generate a daily activity report from the cash register summarizing the store's monetary transactions for that day. After verifying that the cash register actually contained the amount of money listed in the daily activity report, she was supposed to place the money from the cash register in a bank deposit bag and lock the bag in a cabinet on the store's premises overnight. On the following business day, Defendant was expected to take the money in the bag to the bank and deposit it.
 

 Prior to June 2015, Hetzel did not have any concerns about Defendant's job performance or her handling of the business's finances. That month, Defendant called Hetzel to express confusion over how she should handle five dollars that an outside salesman had placed in the cash register. Upon arriving at the store, Hetzel asked Defendant for the applicable deposit ticket. In response, Defendant retrieved from her car five separate envelopes containing cash, checks, and deposit slips. Together, the envelopes contained over $10,000.
 

 Hetzel immediately began reviewing the business's financial records and noticed that the previous deposit made by Defendant was $447 short. When Hetzel asked her about the missing funds, Defendant stated that the money was in the envelopes she had retrieved from her car. Hetzel told Defendant to deposit the money in the envelopes immediately, and she did so. Hetzel fired Defendant the following day.
 

 On 22 June 2015, Hetzel contacted the Greensboro Police Department regarding financial discrepancies in her business records and subsequently discussed her concerns with Detective Edward Bruscino. After analyzing various financial documentation and bank records provided to him by Hetzel, Detective Bruscino determined that discrepancies existed during the time period when Defendant was employed between the amount of money that should have been deposited and the amount that was actually deposited.
 

 Detective Bruscino focused his investigation on the months of December 2014 and March 2015 because those "were the months that truly showed where cash was missing
 
 *881
 
 from multiple deposits." On numerous dates during those months, Defendant had either deposited
 
 *293
 
 less money than the business's financial records indicated should have been deposited or she did not make a deposit at all. At no point during her employment did Defendant ever inform Hetzel about any financial discrepancies related to the business.
 

 Defendant was indicted by a grand jury on 23 January 2017 on the charge of embezzlement. A jury trial was held beginning on 19 July 2017 before the Honorable Michael D. Duncan in Guilford County Superior Court. At the close of the State's evidence, Defendant moved to dismiss the embezzlement charge, and the trial court denied the motion. She renewed her motion to dismiss at the close of all the evidence, which was once again denied.
 

 On 20 July 2017, the jury found Defendant guilty of embezzlement. The trial court sentenced her to a term of 6 to 17 months imprisonment, suspended the sentence, and placed Defendant on supervised probation for a period of 60 months. The court also ordered her to pay restitution in the amount of $4,100.67. Defendant filed a timely notice of appeal.
 

 Analysis
 

 On appeal, Defendant argues that the trial court erred by (1) denying her motion to dismiss the embezzlement charge on the ground that the indictment was facially invalid; (2) instructing the jury on an element of embezzlement not supported by the evidence; and (3) permitting testimony concerning her post-arrest silence. We address each argument in turn.
 

 I. Motion to Dismiss
 

 Defendant first contends that the trial court erred by denying her motion to dismiss. Specifically, she asserts that the indictment was invalid because it failed to allege any fraudulent intent on her part and did not specify the acts committed by her that constituted embezzlement. We disagree.
 

 An indictment must contain
 

 a plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
 

 State v. Jones
 
 ,
 
 367 N.C. 299
 
 , 306,
 
 758 S.E.2d 345
 
 , 350 (2014) (citation, quotation marks, and brackets omitted). An indictment that "fails to
 
 *294
 
 state some essential and necessary element of the offense" is fatally defective,
 
 State v. Ellis
 
 ,
 
 368 N.C. 342
 
 , 344,
 
 776 S.E.2d 675
 
 , 677 (2015) (citation and quotation marks omitted), and if an indictment is fatally defective, the trial court lacks subject matter jurisdiction over the case.
 
 State v. Justice
 
 ,
 
 219 N.C. App. 642
 
 , 643,
 
 723 S.E.2d 798
 
 , 800 (2012).
 

 An indictment "is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution of the same offense."
 
 State v. Stroud
 
 , --- N.C. App. ----, ----,
 
 815 S.E.2d 705
 
 , 709 (citation and quotation marks omitted),
 
 appeal dismissed and disc. review denied
 
 , --- N.C. ----,
 
 817 S.E.2d 573
 
 (2018). A defendant has received sufficient notice "if the illegal act or omission alleged in the indictment is clearly set forth so that a person of common understanding may know what is intended."
 
 State v. Haddock
 
 ,
 
 191 N.C. App. 474
 
 , 477,
 
 664 S.E.2d 339
 
 , 342 (2008) (citation and quotation marks omitted). Furthermore, "while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form."
 
 State v. Harris
 
 ,
 
 219 N.C. App. 590
 
 , 592,
 
 724 S.E.2d 633
 
 , 636 (2012) (citation and quotation marks omitted). On appeal, this Court reviews the sufficiency of an indictment
 
 de novo
 
 .
 
 State v. Marshall
 
 ,
 
 188 N.C. App. 744
 
 , 748,
 
 656 S.E.2d 709
 
 , 712,
 
 disc. review denied
 
 ,
 
 362 N.C. 368
 
 ,
 
 661 S.E.2d 890
 
 (2008).
 

 N.C. Gen. Stat. § 14-90
 
 provides, in pertinent part, as follows:
 

 (a) This section shall apply to any person:
 

 ....
 

 (4) Who is an officer or agent of a corporation, or any agent, consignee, clerk,
 
 *882
 
 bailee or servant, except persons under the age of 16 years, of any person.
 

 (b) Any person who shall:
 

 (1) Embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, or
 

 (2) Take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, any money, goods or other chattels, bank note, check or order for the payment of money ... or any other valuable security whatsoever that (i) belongs to any other person or corporation ... which shall
 
 *295
 
 have come into his possession or under his care, shall be guilty of a felony.
 

 N.C. Gen. Stat. § 14-90
 
 (2017).
 

 This Court has explained that in order to convict a defendant of embezzlement the State must prove the following essential elements:
 

 (1) [T]hat defendant, being more than sixteen years of age, acted as an agent or fiduciary for his principal; (2) that he received money or valuable property of his principal in the course of his employment and through his fiduciary relationship; and (3) that he fraudulently or knowingly and willfully misapplied or converted to his own use the money or valuable property of his principal which he had received in his fiduciary capacity.
 

 State v. Melvin
 
 ,
 
 86 N.C. App. 291
 
 , 298,
 
 357 S.E.2d 379
 
 , 383 (1987) (citation omitted). With regard to the third element, "[t]he State does not need to show that the agent converted his principal's property to the agent's own use, only that the agent fraudulently or knowingly and willfully misapplied it[.]"
 
 State v. Parker
 
 ,
 
 233 N.C. App. 577
 
 , 580,
 
 756 S.E.2d 122
 
 , 124-25 (2014) (citation omitted).
 

 In the present case, Defendant's indictment stated, in pertinent part, as follows:
 

 [D]efendant named above unlawfully, willfully and feloniously did embezzle three thousand nine hundred fifty seven dollars and eighty one cents ($3,957.81) in good and lawful United States currency belonging to AMPZ, LLC d/b/a Interstate All Battery Center. At the time the defendant was over 16 years of age and was the employee of AMPZ, LLC d/b/a Interstate All Battery Center and in that capacity had been entrusted to receive the property described above and in that capacity the defendant did receive and take into her care and possession that property.
 

 Defendant first argues that her indictment failed to adequately allege that she acted with fraudulent intent. As quoted above, the indictment stated that Defendant "unlawfully, willfully and feloniously did embezzle" $3,957.81 in her capacity as an employee of Interstate All Battery Center. Defendant nevertheless contends that her indictment was facially invalid because it merely stated that she "did embezzle" a sum of money without specifically alleging that she did so with a
 
 *296
 
 fraudulent intent. However, "embezzle" has been defined as "to appropriate (as property entrusted to one's care) fraudulently to one's own use." Webster's Ninth New Collegiate Dictionary 406 (9th ed. 1991);
 
 see also
 

 State v. Smithey
 
 ,
 
 15 N.C. App. 427
 
 , 429,
 
 190 S.E.2d 369
 
 , 370 (1972) ("Fraudulent intent which constitutes a necessary element of the crime of embezzlement ... is the intent of the agent to embezzle or otherwise willfully and corruptly use or misapply the property of the principal or employer for purposes other than those for which the property is held." (citation and quotation marks omitted) ).
 

 Thus, the concept of fraudulent intent is already contained within the ordinary meaning of the term "embezzle." As noted above, a defendant receives sufficient notice where the allegations in the indictment permit a "person of common understanding [to] know what is intended."
 
 Haddock
 
 ,
 
 191 N.C. App. at 477
 
 ,
 
 664 S.E.2d at 342
 
 (citation and quotation marks omitted). Defendant makes no contention in her appellate brief that she was prejudiced in her ability to prepare a defense based upon a misapprehension of the meaning of the term "embezzle."
 

 Moreover, this Court has held that an allegation that a defendant acted willfully
 
 *883
 
 "implies that the act is done knowingly" and "suffice[s] to allege the requisite knowing conduct" for purposes of determining the validity of an indictment.
 
 Harris
 
 , 219 N.C. App. at 595-96,
 
 724 S.E.2d at 637-38
 
 (citation and quotation marks omitted). As discussed above, in order to convict a defendant of embezzlement the State is required to prove that she "fraudulently
 
 or
 
 knowingly and willfully misapplied or converted to [her] own use" the property of her principal.
 
 Melvin
 
 ,
 
 86 N.C. App. at 298
 
 ,
 
 357 S.E.2d at 383
 
 (emphasis added). Thus, the allegation contained in Defendant's indictment that she "unlawfully, willfully and feloniously did embezzle" can fairly be read to allege that she "knowingly and willfully" embezzled from her employer. Therefore, we are satisfied that the indictment is not insufficient for failing to specifically allege a fraudulent intent on the part of Defendant.
 

 We find similarly unavailing Defendant's contention that her indictment was defective for failing to specify the acts constituting embezzlement. She makes the conclusory assertion that "the ambiguous term 'embezzle' " was inadequate to properly inform her of the charge against her. However, we find nothing vague or insufficiently particular about the allegations contained in the indictment. Indeed, it alleges that Defendant embezzled $3,957.81 entrusted to her in a fiduciary capacity as an employee of Interstate All Battery Center. We fail to see how these allegations would not adequately apprise Defendant as to the charges facing her or prejudice her ability to prepare a defense. Accordingly,
 
 *297
 
 we hold that the trial court did not err in denying Defendant's motion to dismiss.
 
 See
 

 State v. Lowe
 
 ,
 
 295 N.C. 596
 
 , 604,
 
 247 S.E.2d 878
 
 , 884 (1978) (upholding validity of indictment where "Defendant was sufficiently informed of the accusation against him").
 

 II. Jury Instructions
 

 Defendant next contends that the trial court erred by instructing the jury that it could convict her of embezzlement based upon the theory that she "did take and make away with U.S. currency with the intent to embezzle" where the State's sole theory at trial was instead that she "misapplied" the money. Although Defendant concedes that the trial court did, in fact, correctly charge the jury as to the theory of misapplication, she nevertheless asserts that the erroneous instruction on an alternative theory entitles her to a new trial.
 

 Because Defendant failed to object to the trial court's jury instructions, our review of this issue is limited to plain error.
 
 See
 
 N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 Our appellate courts have held that a new trial is required where a trial court instructs the jury-over the objection of the defendant-on a theory of the defendant's guilt that is not supported by the evidence presented at trial.
 
 See, e.g.,
 

 State v. Pakulski
 
 ,
 
 319 N.C. 562
 
 , 574,
 
 356 S.E.2d 319
 
 , 326 (1987) (holding new trial required where trial court instructed jury on alternative theory unsupported by the evidence);
 
 State v. O'Rourke
 
 ,
 
 114 N.C. App. 435
 
 , 442,
 
 442 S.E.2d 137
 
 , 140 (1994) ("Where
 
 *298
 
 the trial court instructs on alternative theories, one of which is not supported by the evidence, and it cannot be discerned from the record upon which theory the jury relied in arriving at its verdict, the error entitles the defendant to a new trial." (citation omitted) ).
 
 *884
 
 However, a new trial is not necessarily required as a result of such an error in cases where no objection is raised at trial.
 

 Recently ..., our Supreme Court has declared that such instructional errors not objected to at trial are not plain error
 
 per se.
 
 In
 
 State v. Boyd,
 

 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013), the Supreme Court, adopting a dissent from this Court,
 
 222 N.C. App. 160
 
 ,
 
 730 S.E.2d 193
 
 (2012) (Stroud, J., dissenting), declared an additional requirement for a defendant arguing an unpreserved challenge to a jury instruction as unsupported by the evidence. The Court in
 
 Boyd
 
 shifted away from the long standing assumption that the jury based its verdict on the theory for which it received an improper instruction, and instead placed the burden on the defendant to show that an erroneous disjunctive jury instruction had a probable impact on the jury's verdict.
 

 State v. Malachi
 
 , --- N.C. App. ----, ----,
 
 799 S.E.2d 645
 
 , 649 (2017) (internal citations and quotation marks omitted). Thus, a reviewing court conducting a plain error analysis in this context "is to determine whether a disjunctive jury instruction constituted reversible error, without being required in every case to assume that the jury relied on the inappropriate theory."
 
 State v. Robinson
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 309
 
 , 318 (2017) (citation and quotation marks omitted).
 

 In the present case, the trial court instructed the jury, in pertinent part, as follows:
 

 The defendant in this case, members of the jury, has been charged with embezzlement by virtue of employment. For you to find the defendant guilty of this offense, the state must prove three things beyond a reasonable doubt: First, that the defendant was an agent or clerk of AMPZ, LLC, doing business as Interstate All Battery Center.
 

 Second, that while acting as an agent or clerk, U.S. currency came into the defendant's possession or care.
 

 *299
 
 And third, that the defendant
 
 did take and make away with
 
 U.S. currency with the intent to embezzle and fraudulently, knowingly, and willfully misapply and/or convert U.S. currency into the defendant's own use.
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant was an agent or clerk of AMPZ, LLC, doing business as Interstate All Batteries Center, that while the defendant was acting as agent or clerk, U.S. currency came into the defendant's possession or care, and that the defendant embezzled and/or fraudulently or knowingly and willfully misapplied or converted to the defendant's own use U.S. currency with the intent to embezzle, fraudulently or knowingly and willfully misapply or convert U.S. currency to the defendant's own use, it would be your duty to return a verdict of guilty.
 

 (Emphasis added.)
 

 Defendant argues that the trial court committed plain error by instructing the jury on an alternative theory of guilt not supported by the evidence-namely, by including as an element of embezzlement that she "did take and make away with" money entrusted to her in a fiduciary capacity. She concedes, however, that the jury was "correctly instructed on the law arising from the evidence" during the trial court's summation of the elements of embezzlement. Nevertheless, Defendant contends that the trial court deprived her of the right to a unanimous verdict by charging the jury "correctly at one point and incorrectly at another."
 

 We are unable to conclude that the trial court's instructions amounted to plain error. Here, Defendant was the only store employee responsible for depositing money into Interstate All Battery Center's bank account. She was also the only employee whose duties included maintaining financial records and "keeping track of the money." Detective Bruscino testified with regard to numerous dates throughout Defendant's employment on which she should have made cash deposits but either did not deposit any cash at all or deposited less money than she should have. Furthermore, Defendant never expressed any concerns to Hetzel regarding difficulty in balancing the books or the existence of discrepancies in financial records.
 

 *885
 
 The evidence that Defendant misapplied money entrusted to her in a fiduciary capacity was overwhelming. Therefore, it cannot reasonably
 
 *300
 
 be argued that the jury "probably would have returned a different verdict,"
 
 see
 

 Lawrence
 
 ,
 
 365 N.C. at 507
 
 , 723 S.E.2d at 327, but for the trial court's error in instructing it upon the alternative theory that Defendant "did take and make away with" her employer's money. Accordingly, we hold that the trial court's error did not rise to the level of plain error.
 
 See
 

 Robinson
 
 , --- N.C. App. at ----,
 
 805 S.E.2d at 319
 
 (no plain error where improper instruction on alternative theory not supported by the evidence "did not play a significant role in the jury's decision").
 

 III. Testimony Concerning Post-Arrest Silence
 

 Finally, Defendant argues that the trial court plainly erred by permitting Detective Bruscino to testify with regard to her post-arrest silence. Specifically, she asserts that the admission of this testimony violated her Fifth Amendment right against self-incrimination. Once again, we disagree.
 

 "Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose for which the State intends to use such silence."
 
 State v. Boston,
 

 191 N.C. App. 637
 
 , 648,
 
 663 S.E.2d 886
 
 , 894,
 
 appeal dismissed and disc. review denied
 
 ,
 
 362 N.C. 683
 
 ,
 
 670 S.E.2d 566
 
 (2008). This Court has held that "a defendant's pre-arrest silence and post-arrest, pre-
 
 Miranda
 
 warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting the defendant's prior silence is inconsistent with his present statements at trial."
 
 State v. Mendoza
 
 ,
 
 206 N.C. App. 391
 
 , 395,
 
 698 S.E.2d 170
 
 , 174 (2010) (citation omitted).
 

 At trial, the following exchange took place between Defendant's counsel and Detective Bruscino on cross-examination:
 

 [DEFENSE COUNSEL]: Did you ever interview [Defendant] in connection with this case?
 

 [DETECTIVE BRUSCINO]: I did not.
 

 [DEFENSE COUNSEL]: Did you attempt to try to locate her before you issued a warrant to speak with her about it?
 

 [DETECTIVE BRUSCINO]: Yes. We went to multiple locations looking for her. We had many, many addresses to go to, but we didn't go to all of them. We could only go to a few of them. And we weren't able to locate [Defendant].
 

 [DEFENSE COUNSEL]: Did you come to find out how this warrant was served on her?
 

 *301
 
 [DETECTIVE BRUSCINO]: I did not. All I got was notification that it was served.
 

 [DEFENSE COUNSEL]: Okay. So you weren't ever notified that she turned herself in on this case?
 

 [DETECTIVE BRUSCINO]: No.
 

 ....
 

 [DEFENSE COUNSEL]: So did you go to the Rankin King address?
 

 [DETECTIVE BRUSCINO]: The Rankin King address? Yes, we did. We knocked on that door.
 

 [DEFENSE COUNSEL]: Okay. And do you know what happened when you knocked on that door?
 

 [DETECTIVE BRUSCINO]: No one was home. Typically when no one is home, we leave a business card with a phone number on it.
 

 [DEFENSE COUNSEL]: Did you come to find out later that was her mother's address?
 

 [DETECTIVE BRUSCINO]: I did not.
 

 [DEFENSE COUNSEL]: So you didn't go back at any point to try to knock on the door again later?
 

 [DETECTIVE BRUSCINO]: No. We had left a card, as well as that was the address on her license.
 

 [DEFENSE COUNSEL]: Okay. So after [Defendant] did turn herself in when she found out about the warrant, did you try to make an interview with her after that?
 

 [DETECTIVE BRUSCINO]: I did not.
 

 Immediately after the above-quoted testimony from Detective Bruscino, the following exchange took place on redirect examination:
 

 *886
 
 [PROSECUTOR]: Detective Bruscino, after you left your card at the residence listed on [Defendant's] driver's license, when was it after you did that that [Defendant] called you to talk to you?
 

 [DETECTIVE BRUSCINO]: [Defendant] never made contact with me.
 

 *302
 
 [PROSECUTOR]: After you took out charges and [Defendant] was served, when did [Defendant] call you so she could come in and talk to you about this?
 

 [DETECTIVE BRUSCINO]: She never contacted me.
 

 [PROSECUTOR]: Has [Defendant] ever emailed you, voicemailed you or anything to come in and discuss all of this with you?
 

 [DETECTIVE BRUSCINO]: She's never made contact with me.
 

 [PROSECUTOR]: And have you met with people accused of embezzlement and gone over records and things with people who are facing these type of charges?
 

 [DETECTIVE BRUSCINO]: Yes. Many times people will come in to discuss any allegations against them.
 

 [PROSECUTOR]: And do you consider that part of your job?
 

 [DETECTIVE BRUSCINO]: Yes.
 

 Defendant contends that Detective Bruscino's testimony on redirect examination violated her Fifth Amendment right against self-incrimination. The State argues, in response, that Defendant "opened the door" to such testimony. The legal concept of "[o]pening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence would be incompetent or irrelevant had it been offered initially."
 
 State v. Ligon,
 

 206 N.C. App. 458
 
 , 467,
 
 697 S.E.2d 481
 
 , 487 (2010) (citation and quotation marks omitted). Thus, "the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself."
 
 Id.
 
 at 466,
 
 697 S.E.2d at 487
 
 (citation, quotation marks, and brackets omitted). The State asserts that Defendant opened the door to Detective Bruscino's testimony by pursuing a line of inquiry on cross-examination centered around his attempts to contact Defendant both prior to and following her arrest.
 

 We agree with the State that Defendant opened the door for the prosecutor to ask Detective Bruscino about his attempts to contact her. However, we are not persuaded that Defendant similarly opened the door for testimony concerning the extent to which
 
 other
 
 defendants facing embezzlement charges had spoken to Detective Bruscino in the past.
 

 *303
 
 Nevertheless, even assuming
 
 arguendo
 
 that this portion of Detective Bruscino's testimony was improper, because Defendant failed to object to this exchange at trial she is once again limited to plain error review on appeal.
 
 See
 

 State v. Wagner
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 575
 
 , 580 (2016) ("Defendant did not object to this testimony at trial. Therefore, our review is limited to plain error." (citation omitted) ),
 
 disc. review denied
 
 ,
 
 369 N.C. 483
 
 ,
 
 795 S.E.2d 221
 
 (2017).
 

 Based on our thorough review of the record, we fail to see how this portion of Detective Bruscino's testimony could have had a probable impact on the jury's verdict. Therefore, we hold that the trial court's admission of the challenged testimony did not constitute plain error.
 
 See
 

 State v. Stancil
 
 ,
 
 355 N.C. 266
 
 , 267,
 
 559 S.E.2d 788
 
 , 789 (2002) ("The overwhelming evidence against defendant leads us to conclude that the error committed did not cause the jury to reach a different verdict than it otherwise would have reached.").
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from prejudicial error.
 

 NO PREJUDICIAL ERROR.
 

 Judges ELMORE and DILLON concur.