STATE v. BOYD

[222 N.C. App. 160 (2012)]

———

STATE OF NORTH CAROLINA v. BRYANT LAMONT BOYD

No. COA10-1072-2

(Filed 7 August 2012)

**Kidnapping—second-degree—improper jury instruction—no evidence of removal**

The trial court committed plain error by instructing the jury on a theory of second-degree kidnapping that was not charged in the indictment or supported by the evidence. In the absence of any evidence of removal, the presence of the removal instruction provided the jury an illegitimate mode of conviction and constituted error. Defendant's kidnapping conviction was vacated and defendant was granted a new trial.

Judge STROUD dissenting.

Appeal by Defendant from judgment entered 14 April 2010 by Judge Abraham P. Jones in Orange County Superior Court. The case was originally heard before this Court on 10 March 2011. *See State v. Boyd,* ____ N.C. App. ____, ____, 714 S.E.2d 466, 468 (2011). Upon remand by order of the North Carolina Supreme Court, filed 19 June 2012. *See State v. Boyd,* ____ N.C. ____, ____ S.E.2d ____ (2012).

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliot and Agency Legal Specialist Brian C. Tarr, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Bryant Lamont Boyd ("Defendant") appealed from his convictions for first degree burglary, second degree kidnapping, sexual battery, and attaining habitual felon status. The case was originally heard before this Court on 10 March 2011. *See State v. Boyd,* ____ N.C. App. ____, ____, 714 S.E.2d 466, 468 (2011). Defendant alleged the trial court erred by (1) instructing the jury on a theory of second degree kidnapping that was not charged in the indictment or supported by evidence; (2) instructing the jury on a theory of sexual battery Defendant claims was unsupported by evidence; (3) deviating from the pattern jury instructions on the first degree burglary charge; (4) overruling Defendant's objection to, and failing to intervene *ex mero motu* during, the State's closing argument; (5) allowing Defendant to be shackled in view of the jury during the habitual felon stage of the trial; and (6) permitting the introduction of evidence in the habitual felon phase that Defendant claims was irrelevant and impermissibly prejudicial.

This Court found no error in part, granted a new trial in part, vacated in part, and remanded. *Id.* at ____, 714 S.E.2d at 476. We found no error on issues two through five above but found error with the trial court's jury instructions on second degree kidnapping (though we did not apply plain error review). *Id.* at ____, 714 S.E.2d at 469. Accordingly, we vacated Defendant's conviction for kidnapping and remanded for a new trial. *Id.* Because the kidnapping conviction was one of the predicate felonies for Defendant's habitual felon conviction, this Court also vacated and remanded that judgment. *Id.* Accordingly, we did not reach Defendant's last argument on the habitual felon conviction. *Id.*

The State petitioned our Supreme Court for discretionary review, and, on 19 June 2012, our Supreme Court allowed the State's petition only "for the limited purpose of remanding to the Court of Appeals for the application of plain error review pursuant to *State v. Lawrence*, ____N.C. ____, 723 S.E.2d 326 (2012)," which clarifies the appropriate standard for plain error. Therefore, as per our Supreme Court's order, we conduct a new analysis under plain error review on issue one: whether the trial court erred by instructing the jury on a theory of second degree kidnapping that was not charged in the indictment or supported by evidence. After review, we vacate Defendant's kidnapping conviction and grant Defendant a new trial. We further note that, except as herein modified, the remainder of the opinion we filed on 2 August 2011 remains in full force and effect.

## I. Facts and Procedural Background

We adopt the facts and procedural background provided in *Boyd*, ____ N.C. App. at ____, 714 S.E.2d at 469—70.

## II. Standard of Review

Because Defendant did not object to the instructional issue at trial and pursuant to our Supreme Court's direction on remand, Defendant is limited to plain error review. *See* N.C. R. App. P. 10(a)(2) ("A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires. . . ."); *see also State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence.") To show plain error,

> a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." Moreover, because plain error is to be "applied cautiously and only in the exceptional case," the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Lawrence*, ____ N.C. at ____, 723 S.E.2d at 334 (internal citations omitted) (alteration in original).

### III. Analysis

Defendant argues the trial court erroneously instructed the jury with respect to the second degree kidnapping charge. Defendant specifically contends the trial court erred by instructing the jury on a theory of second degree kidnapping (removal) that was unsupported by the evidence presented at trial and not charged in the indictment. "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo*, by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

Before applying plain error analysis to jury instructions, "it is necessary to determine whether the instruction complained of constitutes error." *State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007), *cert. denied*, 552 U.S. 1319 (2008). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), *cert. denied*, 418 U.S. 905 (1974). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id.*

Here, the indictment charged Defendant with second degree kidnapping "by unlawfully confining and restraining her without her consent and for the purpose of terrorizing her." The trial court defined second degree kidnapping in its jury charge as "unlawfully confining a person and/or restraining a person and that person did not consent to this confinement and/or restraint and that this was for the purpose of terrorizing that person." However, in charging the jury on the specifics of second degree kidnapping as they applied to the case at hand, the trial court instructed the jury as follows, including "removal" as a theory on which to convict Defendant:

> For you to find the defendant guilty of [second degree kidnapping], the State must prove three things beyond a reasonable doubt: First, that the defendant unlawfully confined the person—that is, imprisoned her within a given area; restrained a person, that is, restricted her freedom of movement; *or removed a person from one place to another*—second, that the person did not consent—and, as instructed, consent obtained by fraud or fear is not actual consent; and third, that the defendant did so for the purpose of terrorizing that person.

(Emphasis added).

The State argues the inclusion of "removal" as a theory on which to convict Defendant is not error because this theory is supported by the evidence. We disagree and adopt our analysis in *Boyd* on this issue:

> In support of this assertion, the State points to two portions of [the victim's] testimony in which she describes Defendant forcing her to sit on his lap in a nearby chair. The State argues this constitutes sufficient evidence of removal, and therefore Defendant's argument is factually deficient. We find the State's argument unpersuasive. It is unclear how Defendant "forced" [the victim] to accompany him to the chair. And even assuming there is sufficient evidence of actual or constructive force, we conclude the asportation in this case was insufficient to constitute removal.

> We acknowledge that there is no particular requirement that a defendant move a victim a certain distance in order to support a charge of kidnapping under a theory of removal, and our Supreme Court has specifically rejected the notion that removal must be "substantial." *See State v. Fulcher*, 294 N.C. 503, 522–23, 243 S.E.2d 338, 351 (1978) ("[I]t was clearly the intent of the Legislature to make resort to a tape measure . . . unnecessary in determining whether the crime of kidnapping has been committed."). Therefore, the State is correct in citing *State v. Owen*, 24 N.C. App. 598, 211 S.E.2d 830 (1975), for the proposition that moving a victim a short distance *could* constitute kidnapping in a proper case. This, however, is not such a case.

> We do not discount the notion that evidence of removal could be present in a case where a victim was moved a distance equivalent to the space between where [the victim] was standing and the chair. However, we cannot conclude that the evidence presented at trial, or any fair inference stemming therefrom, suggests [the victim] was "removed" in this case. According to her own testimony, the entirety of [the victim's] encounter with Defendant occurred within the confines of her living room, and certainly evidence was presented as to Defendant confining and restraining her. Defendant attempted to talk [the victim] into accompanying him to the bedroom, but she refused. Interpreting [the victim's] testimony as supporting the assertion Defendant "removed" her is not plausible.

> This conclusion is consistent with this Court's recent decisions in the home invasion context. We have recently held that a kidnap-

ping victim may be "removed" from one area of their home to another. *See, e.g.*, *State v. Mangum*, 158 N.C. App. 187, 195, 580 S.E.2d 750, 755 (2003) (evidence tending to show a rape victim was forced down a hallway from one room to another was sufficient asportation to support a conviction for second-degree kidnapping); *see also State v. Blizzard*, 169 N.C. App. 285, 291, 610 S.E.2d 245, 250 (2005) ("[D]efendant's forcible movement of the victim from the front of her home to the bedroom was a sufficient asportation to support kidnapping . . . ."). But these cases are distinguishable from the matter at bar. Both *Mangum* and *Blizzard* involved a victim being "removed" from one section of their home to another. Here, however, [the victim] testified Defendant made her sit on his lap in a chair in the same room, merely a few feet from where she was standing. We hold that, under these facts, where the victim was moved a short distance of several feet, and was not transported from one room to another, the victim was not "removed" within the meaning of our kidnapping statute.

*Boyd*, ____ N.C. App. at ____, 714 S.E.2d at 471-72 (alteration within quotation marks in original). In the absence of any evidence of removal, we hold the presence of the instruction regarding removal provided the jury an illegitimate mode of conviction and constitutes error.

We next consider whether the trial court's error in instructing the jury on a theory not supported by the evidence rises to the level of plain error where the instruction also included alternate theories, which Defendant does not assert were unsupported by the evidence.

Looking only to *Lawrence* for guidance in this case, the dissent would hold Defendant has not shown plain error. Although *Lawrence* analyzes well the application of plain error review to jury instructions, it does not address the situation at hand: where several alternative theories are submitted to a jury but one of those theories is not supported by the evidence. In *Lawrence*, the defendant was charged with two counts of attempted robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon, amongst other charges. ____ N.C. App. at ____, 723 S.E.2d at 329. The trial court correctly instructed the jury on the elements of attempted robbery with a dangerous weapon, including the elements that the defendant possessed a firearm and intended to use it to " 'endanger or threaten the life of [the victim].' " *Id.* (alteration in original). However, the trial court, in its charge on conspiracy to commit robbery with a dangerous weapon, erroneously omitted the element that the weapon "must have been used to endanger or threaten the life of the victim." *Id.* Our

Supreme Court held this failure to constitute error but not plain error because the trial court had properly instructed the jury on the elements of attempted robbery with a dangerous weapon and the jury convicted the defendant of that offense. *Id.* at ____, 723 S.E.2d at 334. Therefore, the only additional element required to convict the defendant of conspiracy to commit robbery with a dangerous weapon was that the defendant "entered into an agreement to do so." *Id.* The Court held that because there was "overwhelming and uncontroverted evidence" that the defendant committed the conspiracy, the defendant could not show that, absent the error, the jury probably would have returned a different verdict. *Id.* at ____, 723 S.E.2d at 335.

Here, the trial court erred by instructing the jury on the theory of removal for Defendant's second degree kidnapping charge. However, this case is distinct from *Lawrence* because there is zero evidence (much less "overwhelming and uncontroverted evidence") that Defendant "removed" the victim. Therefore, although we apply the plain error standard set forth by our Supreme Court in *Lawrence*, we look to other more analogous precedent to determine if plain error has occurred in this case.

"It is a well-established rule in [North Carolina] that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." *State v. Tucker*, 317 N.C. 532, 537-38, 346 S.E.2d 417, 420 (1986) (finding plain error where the State's evidence supported the trial court's jury instruction but the indictment did not) (quotation marks and citation omitted). Going one step beyond *Tucker*, our Supreme Court held in *Porter* that "[w]here jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). Moreover, when the trial court instructs the jury on alternate theories for conviction, one that is supported by the evidence and one that is not, such an error requires a new trial because " 'it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict[.]' " *State v. Johnson*, 183 N.C. App. 576, 583, 646 S.E.2d 123, 128 (2007) (finding plain error and granting the defendant a new trial for second degree kidnapping because the trial court instructed the jury on alternative theories, one that was supported by the evidence and one that was not) (quoting *State v. Hughes*, 114 N.C. App. 742, 746, 443 S.E.2d 76, 79, *disc. rev. denied*, 337 N.C. 697, 448 S.E.2d 536 (1994)).

Here, the removal theory for second degree kidnapping was not supported by the bill of indictment. Moreover, the trial court's jury instruction on the removal theory was given without supporting evidence and constitutes error. Although there is supporting evidence for the theories of confinement and restraint to convict Defendant of second degree kidnapping, we cannot discern from the record whether all twelve jurors convicted Defendant on these instructed theories. Accordingly, similar to our holding in *Johnson*, we cannot allow a conviction based on an erroneous, disjunctive jury instruction to stand because to do so would seriously affect the fairness, integrity, and public reputation of judicial proceedings. Therefore, we hold the trial court's jury instruction on second degree kidnapping including a theory not supported by the evidence constitutes plain error. Defendant is entitled to a new trial on the charge of second degree kidnapping.

## IV.  Conclusion

For the foregoing reasons, Defendant is entitled to a

New trial.

Judge THIGPEN concurs.

Judge STROUD dissents in a separate opinion.

STROUD, Judge dissenting.

I must respectfully dissent, as I believe that the Supreme Court's mandate to this Court requires us to find no plain error as to defendant's conviction for second-degree kidnapping.

As noted by the majority opinion, this case is on remand from the North Carolina Supreme Court solely for this Court to re-examine the issue of the propriety of the jury instructions as to the "removal" element of second-degree kidnapping under plain error review in accord with *State v. Lawrence*, _____ N.C. _____, 723 S.E.2d 326 (2012) and to consider defendant's additional remaining issues which must be addressed if defendant's second-degree kidnapping conviction were upheld.

I.   Plain error review of second-degree kidnapping instructions

I believe that the instructional error as to "removal" does not rise to the level of plain error. The Supreme Court directed us to

**STATE v. BOYD**

[222 N.C. App. 160 (2012)]

*review this case in light of State v. Lawrence*, which discussed the application of plain error review to jury instructions in detail, as follows:

> We now reaffirm our holding in [*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)] and clarify how the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defend-ant must demonstrate that a funda-mental error occurred at trial. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (cita-tions and quotation marks omitted)[.] . . . Moreover, because plain error is to be "applied cautiously and only in the except-ional case," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting [*States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)]).

> Having described the potential paths preserved and unpreserved errors can take on appeal and discussed the federal and North Carolina plain error standards of review, we turn to the present case. The State alleges that the Court of Appeals applied an incorrect standard of plain error review by examining whether the erroneous jury instruction was likely to mislead the jury. The State further contends that if the Court of Appeals had applied the correct stand-ard, defendant would not have met his burden of showing that the erroneous jury instruction amounted to plain error.

> It is uncontested that the trial court's charge on conspir-acy to commit robbery with a dangerous weapon was erro-neous under *State v. Gibbons*, 303 N.C. 484, 279 S.E.2d 574 [(1981)]. Because defendant did not object at trial, we review for plain error. To establish plain error, defendant must show that the erroneous jury instruction was a fundamental error—that the error had a probable impact on the jury ver-dict. In its reliance on *State v. Blizzard*, 169 N.C. App. 285, 610 S.E.2d 245 [(2005)], the Court of Appeals applied an incorrect formulation of the plain error standard of review.

**STATE v. BOYD**

[222 N.C. App. 160 (2012)]

Defendant cannot meet his burden of showing that the error amounted to plain error. The trial court correctly instructed the jury on the elements of attempted robbery with a dangerous weapon. The jury convicted defendant of that offense. Therefore, the only additional element necessary to convict defendant of conspiracy to commit robbery with a dangerous weapon was that he entered into an agreement to do so. The evidence against defendant is overwhelming. The record contains testimony by multiple witnesses describing the efforts of the group, which included defendant, to kidnap, threaten, and rob Ms. Curtis. Two of those witnesses were co-conspirators. Those co-conspirators testified that defendant "knew what was going on." Defendant knew that the group was attempting to rob the homes of purported drug dealers. He knew that the group planned to use zip ties to restrain Ms. Curtis. He knew that the group planned to threaten Ms. Curtis with their firearms to force her to reveal where the money was located. He knew that they would douse her with gasoline and threaten to ignite her if that did not work. In sum, defendant knew the details of the plan, including what being "the muscle" entailed. After all, upon learning of the plan, he volunteered that he already had a gun. Through his interactions with the group, defendant conspired to commit robbery with a dangerous weapon. The evidence, including the testimony of two co-conspirators, clearly establishes that defendant and the rest of the group attempted to carry out their plan to rob Ms. Curtis over a two-day period.

· In light of the overwhelming and uncontroverted evidence, defendant cannot show that, absent the error, the jury probably would have returned a different verdict. Thus, he cannot show the prejudicial effect necessary to establish that the error was a fundamental error. In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings.

____ N.C. at ____, 723 S.E.2d at 334-35.

Here, defendant challenges the references to "removal" in the instructions as to kidnapping, which were as follows:

I turn now to second degree kidnapping. The defendant has been charged with second degree kidnapping. For you

to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt: First, that the defendant unlawfully confined the person—that is, imprisoned her within a given area; restrained a person, that is, restricted her freedom of movement; or *removed a person from one place to another*—second, that the person did not consent—and, as instructed, consent obtained by fraud or fear is not actual consent; and third, that the defendant did so for the purpose of terrorizing that person. Terrorizing means more than just putting another in fear. It means putting that person into some high degree of fear or intense fright or apprehension.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant unlawfully confined or restrained or *removed* a person from one place to another and that person did not consent to this confinement, restraint, or *removal* and this was for the purpose of terrorizing that person, it would be your duty to return a verdict of guilty. If you do not so find or you have a reasonable doubt as to any one of these things, it would be your duty to return a verdict of not guilty.

(Emphasis added.)

The evidence against defendant was "overwhelming" and much was uncontroverted. *See id.* In fact, defendant's theory of the case did not dispute that he was in Ms. Shah's apartment that night or that he had sexual contact with Ms. Shah essentially as she described; instead, his sole defense was that she consented to his presence and activities and she had claimed that he broke into her apartment and assaulted her only because she did not want to tell her husband the truth. He gave a statement to the police that he had met Ms. Shah prior to the night of the alleged crimes, that she wanted to leave her boyfriend, and that he knocked on the front door of her apartment at about 11:30 pm, she let him in, and they talked for about 2 ½ to 3 hours, after which she initiated physical contact with him. But the State's evidence which showed that Ms. Shah did not consent to defendant's actions is compelling. The record shows that Ms. Shah was five feet two inches tall and weighed 105 pounds, while defendant was six feet two inches tall and weighed 250-280 pounds. Ms. Shah testified that after she discovered the defendant sitting in her living room, in the dark, at about 3:00 a.m., he told her

"I'm not here to hurt you. I just—I have noticed you around, and I'm attracted to you. I really like you, and I just want to sleep with you this one time. Can we go to the bedroom and talk?"

And I was like, "No, please. Please, can we just talk over here?"

And he kept insisting, "No, let's go to the bedroom."

And I talked and I said, "Please, you don't have to do this. Please don't do this. I am so scared. You are frightening me. Can we just talk in the living room? Can we just be right here and talk?"

. . . .

And he was like—he was like, "If you don't want me to rape you, you will do this."

Ms. Shah continued to try to convince defendant to leave her alone and to protect herself using "passive defense tactics" she had learned as a flight attendant in dealing with highjackers or disruptive or unruly passengers:

Since you are in a confined space, there is nowhere to run. There's nowhere to hide. All you have got to do is apply passive defense tactics, become composed and collected. What you can do is negotiate with them; negotiate for the elderlies and the children on board the aircraft. At all times never be aggressive; never threaten them; never use body language or your hands too much. That alarms them and that provokes them or could make them aggressive and threaten them. And that was the only thing that came to my mind that night because I was in the same kind of situation where I had nowhere to hide and nowhere to run and no arms or anything to protect myself or defend myself.

Ms. Shah knew that she could not fight the defendant:

And I just thought, "I'm not as strong to fight him. How am I going to—how am I going to—how am I going to protect myself if I get him angry?" And the only one thing that came to my mind was passive defense. And I was just—I just tried to keep delaying it by pleading him and begging him.

And he says, "No. Now that I'm here, I'm going get something out of you."

And I said, "Please don't make me do this. My husband is home. He is going to come home any minute," and try to scare

him by saying that. "But you got to leave. Please don't make me do this. I don't want to do this."

He said, "If you don't want me to rape you, you will do this."

I didn't know what to do because every time I was trying to maneuver myself to get to even the door to see if I could run out, he was so big and strong and just wouldn't—he kept pushing me back. And I thought to myself there was just no way I would be able to fight him.

Defendant remained in Ms. Shah's apartment for quite a long time, as she continued to attempt to convince him to leave without harming her. During much of this time, her testimony indicates that she attempting to make her way to the door to escape, but defendant ultimately insisted that she sit on his lap.

[The State]: When you say you were trying to maneuver towards the door, do you mean the entrance to the apartment?

[Ms. Shah:] The entrance door.

Q. And during your conversation with him, was he standing—keeping himself between you and the door or was he—

A. Between me and the door.

Q. Do you have any concept or recollection of what—about what time it was when you found him in the apartment?

A. Around 3:00 o'clock in the morning; 2:00 or 3:00.

Q. And how long was he there in the apartment?

A. It seemed the longest. Had to be—had to be an hour or more.

Q. Did he—where was—did he stay in the same place the whole time?

A. No, because I was trying to maneuver. He was constantly, you know, trying to make sure I wouldn't get to the door. So he was moving along every time I made a move.

Q. And what were you—while you were moving around, what are you saying to him?

A. Just begging him and pleading him, telling him he doesn't need to do this. "I don't want to do this. Please, for God's sakes, don't do this. Please, I'm not the kind of girl you think I am.

Please, you are scaring me. I'm so frightened. You have got to leave. Please leave.

Of course, defendant did ultimately sexually assault Ms. Shah and was convicted of sexual battery, and this conviction is not at issue in this remand.

In the light of this evidence, I do not believe that defendant has shown "that, absent the error, the jury probably would have returned a different verdict. Thus, he cannot show the prejudicial effect necessary to establish that the error was a fundamental error. In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See Lawrence*, ____ N.C. at ____, 723 S.E.2d at 335. The omission of approximately ten words relating to "removal" from the above jury instructions would, under the facts of this particular case, make no difference at all in the result. Therefore, I would find no plain error as to the trial court's instructions as to second-degree kidnapping.

## II. Additional issues

Defendant has raised two other issues which the majority did not address because it was unnecessary based upon its decision to grant a new trial as to second-degree kidnapping. I will address these briefly, as I would find no merit to defendant's remaining arguments.

A. Shackling during habitual felony phase of trial

I would find that the trial court did not abuse its discretion in ordering defendant to remain in shackles during the habitual felon phase of his trial. In *State v. Billups*, our Supreme Court stated that

> a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances. However, . . . the general rule does not lead to the conclusion that every trial in shackles is fundamentally unfair. Rather, the rule against shackling is subject to the exception that the trial judge, in the exercise of his sound discretion, may require the accused to be shackled when such action is necessary to prevent escape, to protect others in the courtroom or to maintain order during trial.

301 N.C. 607, 611, 272 S.E.2d 842, 846 (1981) (citations and quotation marks omitted). "In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision." *State v. Bodden*, 190 N.C. App. 505, 511, 661 S.E.2d 23, 27

(2008) (citation and quotation marks omitted), *disc. review denied and appeal dismissed*, 363 N.C. 131, 675 S.E.2d 660 (2009).

As the trial court noted to defense counsel in making its ruling, "[t]he jury knows your client has been convicted. They . . . are the ones who convicted him. . . . [H]is status has changed from yesterday. . . . I am going to follow the sheriff department's rules since they are in charge of security." Defendant had just been convicted of three serious crimes, was facing a habitual felony charge, and knew that he faced the possibility of very long prison sentences. I cannot say that the trial court's action was not "the result of a reasoned decision." *See Bodden*, 190 N.C. App. at 511, 661 S.E.2d at 27.

B. Introduction of evidence in habitual felon phase of trial

I would also find that the trial court did not commit plain error in permitting the State to introduce evidence that defendant had, in addition to the three predicate felonies, four other felony convictions, two revocations of probation, 19 prior record points, and was a prior record level VI. First, defendant did not object to the State's introduction of records as to the defendant's criminal record, which included all of this information.

Defendant argues that the additional information, beyond the three predicate felonies, was irrelevant to the issue which the jury was to decide. Defendant also claims that it was "highly prejudicial. . . because it painted him as a hardened criminal who had repeatedly violated the terms of his probationary sentences and thus required heightened punishment." Although I agree that the additional information was irrelevant, I do not agree that defendant has demonstrated that the admission rises to the level of plain error. Although defendant raises some potential questions as to dates of birth and spelling of his name (such as "Bryan" instead of "Bryant" on an order for assignment of counsel as to a probation violation) defendant does not present any credible argument that the three predicate convictions were not in fact his convictions. In fact, based upon the jury's questions, it would appear that the extraneous evidence introduced by the State may have actually helped defendant, as the jurors were confused by some of it.[1] If they had been asked to consider only

1. As the third predicate felony, the jury submitted a question, "What does prior record points of 19 mean?" and "What does Record Level VI mean?" The trial court instructed the jury, without objection from defendant that "I have to refer you back to my instructions on habitual felon and tell you that your only function in this case is to find from the evidence one way or the other, if you find yea or nay, the standard being beyond a reasonable doubt as to the validity of the three convictions that I gave you. The rest of it is beyond the scope of what you need to do."

the judgments for the three predicate felonies, they probably would have reached their guilty verdict more quickly. Thus, defendant has not demonstrated how the introduction of the documents relating to felonies other than the predicate felonies prejudiced him. This Court addressed a similar issue in *State v. Ross*, where the trial court admitted several extraneous documents as part of the defendant's criminal record, including "the magistrate's order (form AOC-CR-116), the indictment (form AOC-CR-122), an order for arrest (form AOC-CR-217), and the 'transcript of plea' (form AOC-CR-300) from Forsyth County file No. 01 CRS 54630." ____ N.C. App. ____, ____, 700 S.E.2d 412, 425 (2010), *disc. review denied*, 365 N.C. 346, 717 S.E.2d 377 (2011). The transcript of plea included defendant's responses to questions regarding his use of drugs: " '4.(a). Are you now under the influence of alcohol, drugs, narcotics, medicines, pills, or any other intoxicants?', to which defendant answered 'yes' and question 4.(b) 'When was the last time you used or consumed any such substances?', to which defendant answered, 'today[.]' " *Id.* at ____, 700 S.E.2d at 425-26. In *Ross*, defendant did object to the trial court's failure to redact this information, but this Court still found that although the information was irrelevant, he failed to show prejudice:

> Given the overwhelming and uncontradicted evidence of the three felony convictions, there is essentially no likelihood that a "different result . . . would have ensued[,]" *see [State v. Moses*, 350 N.C. 741, 762, 517 S.E.2d 853, 867 (1999), *cert. denied*, 528 U.S. 1124, 145 L. Ed. 2d 826 (2000).], if the trial court had redacted "transcript of plea" questions 4(a) and (b) and/or defendant's answers to those questions. Defendant's argument is therefore without merit. Although other documents, such as a transcript of plea, could be used to prove a conviction, we agree that, as our Supreme Court stated, the *"preferred method* for proving a prior conviction includes the introduction of the judgment itself into evidence." [*State v. Maynard*, 311 N.C. 1, 26, 316 S.E.2d 197, 211, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984)] (emphasis added).

*Id.* at ____, 700 S.E.2d at 426; *See also Lawrence*, ____ N.C. at ____, 723 S.E.2d at 334-35.

Thus, although it would have been preferable for the State to admit only the prior judgments as to the three predicate felonies, defendant has not demonstrated that the admission of the additional, irrelevant information rises to the level of plain error.

Thus, for the foregoing reasons, I would find that the trial court committed no plain error as to the instructions as to second-degree kidnapping, no abuse of discretion as to shackling defendant during the habitual felon phase, and no plain error as to introduction of the challenged evidence as to defendant's criminal record in the habitual felon phase. I therefore respectfully dissent.