ZACHARY, Judge.
 

 *397
 
 Charles Bernard Robinson (defendant) appeals from the judgments entered upon his conviction of possession of cocaine with the intent to
 
 *398
 
 sell or deliver and possession of a firearm by a felon, and from his plea of guilty to having attained the status of an habitual felon. On appeal, defendant argues that the trial court erred by denying his motion to suppress evidence, and committed plain error in its instructions to the jury on actual and constructive possession. After careful consideration of defendant's arguments, we conclude that the court did not err by denying his suppression motion, and that the court's instructions did not constitute plain error.
 

 Background
 

 On 26 June 2014, Detective C.T. Davis of the Charlotte-Mecklenburg Police Department applied for and was issued a search warrant authorizing him to search a house located at 3627 Corbett Street, in Charlotte, North Carolina. During the search, law enforcement officers seized two firearms, marijuana, and cocaine. Defendant was present during the search and made inculpatory statements to a law enforcement officer, admitting ownership of the firearms and the cocaine.
 

 On 3 November 2014, defendant was indicted for possession of cocaine with the intent to sell or deliver, possession of marijuana, maintaining a dwelling for the purpose of keeping or selling controlled substances, possession of a firearm by a person previously convicted of a felony, and having attained the status of an habitual felon. Prior to trial, the State dismissed the charges of possession of marijuana and maintaining a dwelling for the purpose of keeping or selling controlled substances. On 6 November 2015, defendant filed a motion asking the court to suppress the evidence that was seized during the search of the Corbett Street residence and the statements defendant made to law enforcement officers during the search. Defendant alleged that the search warrant was not based upon probable cause and that the statements he made "were involuntary and made as the result of mental or psychological pressure[.]" Defendant was tried before the trial court and a jury beginning on 16 February 2016. Prior to trial, the trial court conducted a hearing on defendant's suppression motion, and orally denied defendant's motion to suppress evidence. The court entered a written order on 1 March 2016.
 

 The State's evidence at trial tended to show, in relevant part, the following: Detective Todd Hepner of the Charlotte-Mecklenburg Police Department testified that he and several other officers executed the search warrant for the Corbett Street residence. When Detective Hepner entered the house, defendant was present, along with his wife, Armisher Glenn, and the couple's two children. In the master bedroom, Detective
 
 *399
 
 Hepner and another officer found a .44 caliber revolver, a shotgun, cocaine, and marijuana. Detective Charlie Davis testified that on 26 June 2014 he obtained and executed a search warrant for the house located at 3627 Corbett Street, Charlotte. He described for the jury the process of searching the house and
 
 *312
 
 the items that were seized. After the contraband had been located and placed on the bed, defendant was brought into the bedroom by another officer and accurately identified the location within the bedroom where each of the items had been stored. Andrew Oprysko, a chemist for the Charlotte-Mecklenburg Police Department, testified as an expert in forensic chemistry that forensic testing had identified the material seized during the search of the Corbett Street house as cocaine.
 

 Detective Sidney Lackey testified that while other officers were searching the house, he interviewed defendant. During this interview, defendant admitted that the cocaine, marijuana, and firearms discovered by the law enforcement officers belonged to him. The State accepted defendant's stipulation to the fact of his prior conviction of a felony for purposes of the charge of possession of a firearm by a felon.
 

 Defendant also presented evidence at trial. Armisher Glenn testified that she was defendant's wife and that she had never known defendant to be in possession of cocaine or to sell drugs. Neither she nor defendant owned any firearms; however, Ms. Glenn's brother had asked to store two guns at her house and she assumed that these were the firearms seized by the police. In June of 2014, defendant and Ms. Glenn were separated due to marital difficulties; however, defendant sometimes visited the family home. On one occasion, Ms. Glenn's sister, Ms. Luba Hill, watched the children while defendant and Ms. Glenn went out to supper. Upon their return, defendant engaged in a conflict with his nephew, Ms. Hill's son. Assault charges were filed against defendant and his nephew, but were later dismissed. Ms. Hill remained angry at defendant after this altercation and made false reports about Ms. Glenn to the Department of Social Services. Ms. Hill's daughter, Kiarra Hill, testified about Ms. Hill's anger about the conflict between her son and defendant, and about statements her mother made in which she threatened to "get" an unnamed person. Candace Glenn testified that Armisher Glenn and Luba Hill were her daughters, and that Ms. Hill was very angry about the fight between defendant and Ms. Hill's son. At one point Ms. Hill was holding a "rock" of some substance and threatened to "get" defendant.
 

 Defendant testified on his own behalf at trial. He denied owning firearms or cocaine or selling cocaine in 2014. Defendant testified about the fight between him and his nephew and about his belief that his arrest was the result of being "set up" by Ms. Hill. He was not aware that
 
 *400
 
 there were drugs or firearms in the house on 26 June 2014. Although the contraband did not belong to him, defendant made inculpatory statements to Detective Lackey in order to prevent the police from arresting Ms. Glenn and placing his children in the custody of DSS. On cross-examination, defendant admitted to having prior criminal convictions, including a 2009 conviction for identity theft.
 

 Following the presentation of evidence, the arguments of counsel, and the trial court's instructions, the jury returned verdicts finding defendant guilty of possession of cocaine with the intent to sell or distribute and with possession of a firearm by a convicted felon. Defendant then entered a plea of guilty to having the status of an habitual felon. The trial court sentenced defendant to concurrent sentences of 83 to 112 months' imprisonment for possession of a firearm by a felon, and 73 to 100 months' imprisonment for possession of cocaine with the intent to sell or deliver. Defendant gave notice of appeal in open court.
 

 Standard of Review
 

 Defendant argues that the trial court erred by denying his motion to suppress. "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011) (citation omitted).
 

 Defendant also argues that the trial court erred by instructing the jury that it could find that he was in either actual or constructive possession of the firearms and cocaine in the house, on the grounds that there was no evidence to support a finding of actual possession. As defendant did not object
 
 *313
 
 to this instruction at trial, we review only for plain error. Under this standard, the defendant "must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012).
 

 Denial of Suppression Motion
 

 Defendant argues that the trial court erred by denying his motion to suppress the evidence seized pursuant to the search of the Corbett Street residence.
 
 [1]
 
 Defendant's motion also sought to suppress the statements
 
 *401
 
 defendant made to Detective Lackey at the time of the search; however, defendant has not pursued this argument on appeal and, accordingly, it is deemed to be abandoned. See N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."). The sole basis of defendant's appellate argument that the trial court erred by denying his suppression motion is his contention that, when Detective Davis executed a sworn affidavit in support of his application for a search warrant, he made "a knowingly false statement that, if omitted, would render the search warrant insufficient to establish probable cause." However, at the trial level, defendant did not argue that the statements which Detective Davis included in the affidavit were made in bad faith or reckless disregard of the truth. As a result, defendant has not preserved this issue for appellate review. Moreover, even assuming,
 
 arguendo
 
 , that this issue were preserved, defendant has failed to show that the trial court erred by denying his motion to suppress.
 

 It is well-established that:
 

 The requirement that a search warrant be based on probable cause is grounded in both constitutional and statutory authority. U.S. Const. amend. IV ; N.C.G.S. § 15A-244 [ (2015) ]. Probable cause for a search is present where facts are stated which establish reasonable grounds to believe a search of the premises will reveal the items sought and that the items will aid in the apprehension or conviction of the offender. It is elementary that the Fourth Amendment's requirement of a factual showing sufficient to constitute "probable cause" anticipates a truthful showing of facts.
 

 State v. Fernandez
 
 ,
 
 346 N.C. 1
 
 , 13,
 
 484 S.E.2d 350
 
 , 358 (1997) (citing
 
 Franks v. Delaware
 
 ,
 
 438 U.S. 154
 
 , 164-65,
 
 98 S.Ct. 2674
 
 ,
 
 57 L.Ed. 2d 667
 
 , 678 (1978) ). However:
 

 There is a presumption of validity with respect to the affidavit supporting the search warrant. Before a defendant is entitled to a hearing on the issue of the veracity of the facts contained in the affidavit, he must make a preliminary showing that the affiant knowingly, or with reckless disregard for the truth, made a false statement in the affidavit.... A claim under
 
 Franks
 
 is not established merely by evidence that contradicts assertions contained
 
 *402
 
 in the affidavit, or even that shows the affidavit contains false statements. Rather, the evidence must establish facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith.
 

 Fernandez
 
 ,
 
 346 N.C. at 14
 
 ,
 
 484 S.E.2d at 358
 
 (citations omitted).
 

 The motion that defendant filed seeking the suppression of evidence seized pursuant to the execution of a search warrant for the Corbett Street house disputes the accuracy of two sections of the affidavit. First, defendant objects to the statement in the affidavit that he gave 3627 Corbett Street as his address "in April of 2013 during a domestic violence arrest." The incident to which this allegation refers was the altercation between defendant and his nephew, which resulted in both being charged with assault. At the hearing on his suppression motion, defendant argued that this was not a "domestic violence" arrest. In addition, during the hearing on his motion, the parties agreed that the arrest had actually taken place in May of 2014, rather than April, 2013. However, defendant
 
 *314
 
 neither disputed that at the time of his arrest he gave 3627 Corbett Street as his address, nor argued that these inaccuracies were made in bad faith or with a reckless disregard for the truth. Furthermore, defendant did not argue at the hearing or on appeal that the details of this arrest were important to the magistrate's determination that probable cause existed for the issuance of the search warrant.
 

 Defendant's primary challenge was to the section of Detective Davis's affidavit concerning the use of a confidential and reliable informant, referred to in the affidavit as a "CRI." The affidavit states the following:
 

 In June of 2014, this applicant began utilizing a CRI to complete the investigation on Charles Bernard Robinson. This Applicant obtained a 2006 Mug shot photo of Charles Bernard Robinson and showed the photograph to the CRI. The CRI advised that Charles Bernard Robinson was known on the streets as "Red." The CRI confirmed that Charles Bernard Robinson sold crack cocaine and that he operated from the telephone number (704)-819-4383. This confirmed the information that was provided by the Crime Stoppers tipster.
 

 Within the past 72 hours this confidential and reliable informant has purchased "crack" cocaine from Charles Bernard Robinson at the residence located on 3627 Corbett Street under this Applicant's direct supervision.
 

 *403
 
 This Applicant has known this confidential informant for over (28) months. During this time, this informant has provided intelligence information regarding Drug distributors in the Charlotte area that this Applicant has verified to be true and factual. This informant has admitted to using and selling controlled substances in the past and is familiar with how they are packaged and sold on the streets of Charlotte. This informant has made purchases of controlled substances under this Applicant's direct supervision.
 

 In his suppression motion, defendant states that he was not known by the street name Red, was not selling cocaine from the Corbett Street house, and had not sold crack cocaine "in the recent past." However, the suppression motion does not assert that these alleged inaccuracies were the result of bad faith, intentional misstatement, or reckless indifference to the truth. Instead, the thrust of defendant's suppression motion and of his argument before the trial court was that the allegations in Detective Davis's affidavit were insufficiently detailed to establish probable cause for the issuance of a search warrant. Defendant contends in the suppression motion that the information in the affidavit concerning the CRI's purchase of crack cocaine was "insufficient to reach the level of probable cause[.]" Defendant supports this assertion with quotations from
 
 State v. Taylor
 
 ,
 
 191 N.C. App. 587
 
 ,
 
 664 S.E.2d 421
 
 (2008).
 

 At the hearing on the suppression motion, defendant argued that the characterization of his arrest for assault as a "domestic violence" incident was misleading. Regarding the information in the affidavit about the controlled buy, defense counsel informed the trial court that "the case [he was] relying on" was
 
 State v. Taylor
 
 , cited above. Defendant's counsel discussed the holding of
 
 Taylor
 
 at length as it related to the level of detail required for an affidavit's description of a controlled buy of drugs. Defense counsel summarized his argument as follows:
 

 MR. CLIFTON: In this case, we've got the past 72 hours this confidential reliable informant has purchased crack cocaine from Charles Bernard Robinson at the residence located on 3627 Corbett Street under this affiant's direct supervision, and to me that just doesn't fit what
 
 State v. Taylor
 
 is calling for. It appears to me to be insufficient, and that's why I'm arguing this motion to suppress should be granted. There's nothing about the cocaine being turned over to the officer, and it doesn't even say in here that he saw him go into the house or make the buy. So in
 
 *404
 
 other words, to me, it does not meet the standards that are set out in
 
 Taylor
 
 . In
 
 Taylor
 
 , you know, the motion-they affirmed the trial court's granting of the defendant's motion to suppress. This case is dated from 2008, which I believe this postdates all these cases that [the prosecutor] presented to you, so it just looks to me like there's not enough in this affidavit to lead
 
 *315
 
 to a finding of probable cause in order to go into somebody's house.
 

 The prosecutor argued that the facts of
 
 Taylor
 
 were distinguishable, and then addressed the issue of whether the affidavit contained incorrect statements:
 

 MS. HONEYCUTT: As far as the other sub issue, incorrect information in the search warrant, I was referring to ... the issue Mr. Clifton already addressed as far as the previous arrest at that location.... [
 
 State v
 
 .]
 
 Fernandez
 
 says that when a search warrant is issued on the basis of an affidavit containing false facts which are necessary to a finding of probable cause, the defendant has to prove by a preponderance of the evidence that the facts were asserted with knowledge of their falsity or reckless disregard for the truth.
 
 Fernandez
 
 also says that before the defendant is entitled to a hearing on the issue of the veracity of the facts contained in the affidavit, he has to make a preliminary showing that the affiant either knowingly or with reckless disregard for the truth made a false statement in the affidavit and that he must establish facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith.... [T]he defendant hasn't made-in any way established that the affiant was acting in bad faith when he alleged the incorrect date and that the defendant was arrested at this address.
 

 Thereafter, defense counsel called defendant to testify about the facts set out in the affidavit. Defendant testified in detail regarding the altercation with his nephew, his living situation at the time of his arrest, and his lack of recent criminal activity. He also made a single, conclusory, statement about the controlled buy:
 

 MR. CLIFTON: Okay. All right, now the affidavit that Detective Davis filed states that the confidential informant bought cocaine from you three days before-sometime in the three days before the search warrant was served. What do you have to say about that?
 

 *405
 
 DEFENDANT: I say that's a lie.
 

 MR. CLIFTON: Okay.
 

 After hearing the testimony offered to support or challenge the issuance of a search warrant, the trial court asked defense counsel if he wished to be heard on the issue of Detective Davis's good faith in executing the affidavit, and defendant's attorney said he did not want to address the issue. The prosecutor then argued that defendant's bare denial did not establish bad faith, citing an unpublished case from this Court,
 
 State v. Price
 
 , --- N.C. App. ----, --- S.E.2d ---- (2005 N.C. App. Lexis 556) (unpublished):
 

 MS. HONEYCUTT: Your Honor, I'll just point out that in
 
 State v. Price
 
 , which is one of the first cases I handed up, it also addresses the issue of the defendant testifying as far as incorrect or false information in the affidavit. It specifically says in that case that the defendant's testimony that he didn't sell was mere contradictory evidence that doesn't show bad faith. In that case, the defendant took the stand and said he didn't sell to an informant, and the Court ruled that that was not enough to show bad faith on the facts of the affiant which is contradictory evidence to what was in the search warrant, and I would say that's what we have here.
 

 In response to the prosecutor's argument, defendant's attorney did not contend that bad faith on the part of Detective Davis could be established on the basis of defendant's bare denial, and repeated that the basis for the suppression motion was the lack of detail in the affidavit:
 

 MR. CLIFTON: Okay. And, Your Honor, I understand that. I mean, I'm hanging my hat on the-
 
 State v. Taylor
 
 basically. I don't know how we could get into it at trial where the State's going to say this happened, he's going to say no, there's no way that happened. That's not going to do any good, but certainly the
 
 State v. Taylor
 
 language, I think, does.
 

 THE COURT: Thank you, Mr. Clifton.
 

 On appeal, defendant limits his argument to the section of the affidavit concerning the purchase of crack cocaine by a CRI. Defendant contends that the issue of Detective Davis's bad faith was raised at the trial level and that defendant's statement at the hearing that these
 
 *406
 
 allegations were "a lie" served
 
 *316
 
 to "establish" that the detective knowingly made false statements in the affidavit.
 

 We have carefully reviewed defendant's suppression motion and the transcript of the hearing on the motion. We conclude that at no time did defendant argue that Detective Davis had knowingly made false statements in the affidavit or that he had acted in bad faith or in reckless disregard for the truth. Instead, defendant's suppression motion was based on a question of law: whether the allegations contained in the affidavit were sufficiently detailed to permit the magistrate to issue a search warrant upon a finding of probable cause. "This Court has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.' "
 
 State v. Sharpe
 
 ,
 
 344 N.C. 190
 
 , 194,
 
 473 S.E.2d 3
 
 , 5 (1996) (quoting
 
 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) ).
 
 See also
 

 State v. Benson
 
 ,
 
 323 N.C. 318
 
 , 321-22,
 
 372 S.E.2d 517
 
 , 518-19 (1988) (applying the "no swapping horses" rule where defendant relied on one theory at trial as basis for written motion to suppress and then asserted a different theory on appeal).
 

 On appeal, defendant asserts that the "veracity" of Detective Davis's allegations in the affidavit was "before the trial court" at the hearing on his suppression motion. However, defendant has failed to identify any instances in which he argued before the trial court that Detective Davis had knowingly made false statements in the affidavit or had acted in bad faith.
 

 Defendant also directs our attention to selected excerpts from Detective Davis's testimony at trial. During cross-examination, defense counsel attempted to ask the detective for the basis of the information about defendant's home address contained in the affidavit. The prosecutor objected, saying that they "had already dealt with the search warrant" and the trial court sustained the objection. In the absence of the jury, defense counsel brought up the issue of Detective Davis's good faith for the first time, and only as it related to the characterization of defendant's arrest as being for domestic violence:
 

 THE COURT: In terms of the second issue, I was going to allow you to make a proffer, if you wish, with regard to your question concerning the search warrant. Again, this being outside the presence of the jury. I sustained the objection but if you wish to be heard further regarding that outside the presence of the jury, I'm happy to hear it.
 

 *407
 
 MR. CLIFTON: It's my client's concern that it was done out of bad faith by Detective Davis. That sentence in the search warrant about it being a domestic violence connected to an arrest at this address. He sees that as a bad faith-something put into the search warrant out of bad faith on the part of the detective, and that's why he wants me to bring it up.
 

 ...
 

 MS. HONEYCUTT: Your Honor, I would say that the Court has already addressed the issue of bad faith. This is not a situation where the search warrant is in front of the jury and they're thinking that something is true that wasn't because of what's in that search warrant. They don't have that before them, and I think we've already addressed that issue.
 

 THE COURT: All right. I have sustained the State's objection previously. I will continue with that same ruling, but it is on the record the basis by which the question is reserved for review.
 

 On appeal, defendant contends that this dialogue establishes that Detective Davis's good faith in asserting that a CRI had made a controlled buy of cocaine "is properly before this Court." However, defense counsel's belated reference to the detective's "bad faith" in using the term "domestic violence" does not alter the fact that neither defendant's written motion nor his argument during the hearing on the suppression motion ever asserted that Detective Davis had made knowingly false statements regarding the controlled buy. We conclude that defendant's appellate argument, that the allegations in the affidavit concerning the purchase of cocaine by a CRI were knowingly false and made in bad faith, was not raised before the trial court and therefore was not preserved for appellate review.
 

 *317
 
 Our conclusion on this question does not reflect a technical default, but an issue of fundamental fairness. On appeal, defendant stresses that Detective Davis "did not testify at the suppression hearing" and that "the State did not put on any evidence relating to the controlled buy." Appellate counsel argues that defendant's "uncontroverted testimony that he did not sell cocaine in the 72 hours before the search warrant was executed was evidence of bad faith." However, as discussed above, at the hearing on his suppression motion, defendant relied upon a
 
 legal
 

 *408
 
 argument-that, even if the allegations in the affidavit were true, they were insufficient to establish probable cause for the issuance of a search warrant. Given that defendant did not argue at the hearing that Detective Davis had acted in bad faith, the State had no reason to offer testimony from the officer on the issue of his good faith. Moreover, the trial court was not asked to rule on this issue; in fact, when the prosecutor argued that defendant's conclusory statement that the affidavit was "a lie" did not establish bad faith, defense counsel conceded as much and stated that he was "hanging his hat" on the legal argument based on
 
 State v. Taylor
 
 .
 

 Finally, we observe that even assuming that this issue were preserved, defendant has failed to show that he is entitled to relief. The sworn affidavit submitted by Detective Davis contained a comprehensive explanation of the basis for the application for a search warrant, including information as to (1) Detective Davis's extensive experience in law enforcement and specifically in the investigation of crimes involving controlled substances; (2) the tip received through the Crime Stoppers organization that included many details about defendant's drug dealing; (3) corroboration of defendant's address through investigative research; (4) the fact that defendant's prior criminal record included a 2001 conviction for possession of cocaine; (5) the basis of Detective Davis's belief that the CRI was a reliable informant, and; (6) the CRI's purchase of cocaine from defendant. Defendant's opposition to the affidavit consisted of a conclusory assertion that it was "a lie." It is axiomatic that:
 

 An appellate court's review of a trial court's order on a motion to suppress "is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." Because the trial court, as the finder of fact, has the duty to pass upon the credibility of the evidence and to decide what weight to assign to it and which reasonable inferences to draw therefrom, "the appellate court cannot substitute itself for the trial court in this task."
 

 State v. Villeda
 
 ,
 
 165 N.C. App. 431
 
 , 437-38,
 
 599 S.E.2d 62
 
 , 66 (2004) (quoting
 
 State v. Allison
 
 ,
 
 148 N.C. App. 702
 
 , 704,
 
 559 S.E.2d 828
 
 , 829 (2002), and
 
 Nationsbank of North Carolina v. Baines
 
 ,
 
 116 N.C. App. 263
 
 , 269,
 
 447 S.E.2d 812
 
 , 815 (1994) ).
 

 In this case, the trial court found that the affidavit established that the CRI had purchased cocaine from defendant within 72 hours before
 
 *409
 
 the issuance of the search warrant. Defendant objects to the use of the word "established," and argues that because defendant called the affidavit a lie, "the affidavit could not 'establish' evidence of its own truthfulness." Defendant contends that the trial court should have instead found only that the affidavit "stated" certain things. However, the trial court's use of the word "established" clearly indicates that the court is finding the statement to be accurate. In contrast, a court's recitation of what a witness or document "stated" does not constitute a finding of fact.
 
 Moore v. Moore
 
 ,
 
 160 N.C. App. 569
 
 , 571-72,
 
 587 S.E.2d 74
 
 , 75 (2003) ("Recitations of the testimony of each witness do not constitute findings of fact by the trial judge[.]"). Furthermore, defendant has offered no reason why the trial court could not consider both defendant's testimony that the affidavit was "a lie" as well as the contents of the sworn affidavit, in order to make a determination of the facts.
 

 For the reasons discussed above, we conclude that defendant failed to preserve for appellate review the argument that Detective Davis knowingly and in bad faith made false statements in the affidavit. We further conclude that, even assuming that this issue were preserved, defendant has not shown
 
 *318
 
 that the trial court erred in its assessment of the weight and credibility of the evidence.
 

 Instructions on Possession
 

 Defendant also argues that the trial court erred by instructing the jury on both actual and constructive possession, on the grounds that there was no evidence to support an instruction on actual possession. We conclude that defendant is not entitled to relief on the basis of this argument.
 

 At the close of all the evidence, the prosecutor requested that the trial court instruct the jury on both actual and constructive possession, and defense counsel agreed to this. Upon review of the printed copies of the instructions that the trial court intended to give the jury, defendant's attorney had no requests for changes. After the jury was instructed, defense counsel informed the trial court that he had no objections or requests for additions or modifications. We conclude that defendant did not object at trial to the instruction that he challenges on appeal.
 

 "Because defendant did not object to the instruction as given at trial, we consider whether this instruction constitutes plain error. See N.C. R. App. P. 10(a)(4) ; see also
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 512,
 
 723 S.E.2d 326
 
 , 330 (2012)."
 
 State v.
 

 Juarez
 
 ,
 
 369 N.C. 351
 
 , 357,
 
 794 S.E.2d 293
 
 , 299 (2016). The plain error standard requires a defendant to "demonstrate that a fundamental error occurred at trial. To show
 
 *410
 
 that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 
 Lawrence
 
 , 365 N.C. at 518,
 
 723 S.E.2d at 334
 
 (internal quotation omitted). "For plain error to be found, it must be probable, not just possible, that absent the instructional error the jury would have returned a different verdict."
 
 Juarez
 
 ,
 
 369 N.C. at 358
 
 ,
 
 794 S.E.2d at
 
 300 (citing
 
 Lawrence
 
 ).
 

 Our appellate courts previously held that it was
 
 per se
 
 plain error for a trial court to instruct the jury on a theory of the defendant's guilt that was not supported by the evidence.
 
 See, e.g.,
 

 State v. Tucker
 
 ,
 
 317 N.C. 532
 
 , 540,
 
 346 S.E.2d 417
 
 , 422 (1986) ("[I]t would be difficult to say that permitting a jury to convict a defendant on a theory ... not supported by the evidence is not plain error even under the stringent test required to invoke that doctrine.") However, in
 
 State v. Boyd
 
 ,
 
 222 N.C. App. 160
 
 , 167-68,
 
 730 S.E.2d 193
 
 , 198 (2012),
 
 reversed and remanded
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013), the jury was instructed that it could convict the defendant of kidnapping based upon a finding that the defendant had confined, restrained, or removed the victim. There was no evidence to support the theory that the defendant had removed the victim, and on appeal this Court held that the trial court's instruction constituted plain error. Judge Stroud, relying upon standard for plain error set out in
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 ,
 
 723 S.E.2d 326
 
 (2012), dissented:
 

 I do not believe that defendant has shown "that, absent the error, the jury probably would have returned a different verdict. Thus, he cannot show the prejudicial effect necessary to establish that the error was a fundamental error. In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings."
 
 See
 

 Lawrence
 
 , [ 365] N.C. at [519],
 
 723 S.E.2d at 335
 
 . The omission of approximately ten words relating to 'removal' from the above jury instructions would, under the facts of this particular case, make no difference at all in the result. Therefore, I would find no plain error as to the trial court's instructions as to second-degree kidnapping.
 

 Boyd
 
 ,
 
 222 N.C. App. at 173
 
 ,
 
 730 S.E.2d at 201
 
 (Stroud, J., dissenting). On appeal, the North Carolina Supreme Court, in a
 
 per curiam
 
 opinion, reversed for the reasons stated in the dissent.
 
 State v. Boyd
 
 ,
 
 366 N.C. 548
 
 , 548,
 
 742 S.E.2d 798
 
 , 799 (2013). Thus, "under
 
 Boyd
 
 , a reviewing court is to determine whether a disjunctive jury instruction constituted reversible error, without being required in every case to assume that the
 
 *411
 
 jury relied on the inappropriate theory."
 
 State v. Martinez
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 356
 
 , 361 (2017).
 

 "To prove that a defendant possessed contraband materials, the State must prove beyond a reasonable doubt that the defendant had either actual or constructive
 
 *319
 
 possession of the materials."
 
 State v. Loftis
 
 ,
 
 185 N.C. App. 190
 
 , 197,
 
 649 S.E.2d 1
 
 , 6 (2007) (citation omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 241
 
 ,
 
 660 S.E.2d 494
 
 (2008). "A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use."
 
 State v. Reid
 
 ,
 
 151 N.C. App. 420
 
 , 428-29,
 
 566 S.E.2d 186
 
 , 192 (2002) (citation omitted). "Constructive possession exists when the defendant, 'while not having actual possession, ... has the intent and capability to maintain control and dominion over' the narcotics."
 
 State v. Matias
 
 ,
 
 354 N.C. 549
 
 , 552,
 
 556 S.E.2d 269
 
 , 270 (2001) (quoting
 
 State v. Beaver
 
 ,
 
 317 N.C. 643
 
 , 648,
 
 346 S.E.2d 476
 
 , 480 (1986) ).
 

 In the present case, Detective Davis testified without objection that he "had obtained a search warrant for the residence in reference to drugs being sold from the home" by defendant. When the law enforcement officers searched the Corbett Street house, defendant was present along with his wife and children. Detective Hepner and another officer searched the master bedroom, where they found a .44 caliber revolver, a shotgun, cocaine, and marijuana. During the search, defendant was interviewed by Detective Lackey, to whom he admitted owning the firearms and the cocaine. Defendant testified at trial that, although he and his wife were separated at the time of the search, he was at the house "pretty much on a daily basis," and when defendant was brought into the bedroom, he accurately pointed out where the drugs and firearms had been, indicating that he had been aware of their presence.
 

 Defendant's defense at trial was that the contraband found in the house did not belong to him. Defendant's wife testified that the marijuana in the house belonged to her and that her brother had asked to store two firearms in the house. Defendant and his wife testified that defendant did not own guns or cocaine and did not sell drugs. In regard to the cocaine found in the house, defendant, his wife, and several other witnesses testified to circumstances in support of defendant's theory that his sister-in-law had planted the drugs in his house in revenge for a fight between defendant and his nephew.
 

 We conclude that there was substantial evidence that defendant constructively possessed the items seized during the search, and defendant
 
 *412
 
 has not contested the sufficiency of the evidence of constructive possession. We agree with defendant that there was no evidence that defendant was in actual possession of either the firearms or the narcotics seized from the house. These items were found in the master bedroom of the home, rather than on defendant's person. We conclude, however, that defendant has failed to show that it is "probable, not just possible, that absent the instructional error the jury would have returned a different verdict."
 
 Juarez
 
 at 358,
 
 794 S.E.2d at 300
 
 . The primary factual issue for the jury to resolve was whether to find defendant guilty based upon the State's evidence or to believe defendant's explanations for the presence of firearms and cocaine in the house. Simply put, the question for the jury was whether to believe that defendant's sister-in-law planted the drugs and that his wife's brother was storing weapons in defendant's house. We conclude without difficulty that the distinction between actual and constructive possession did not play a significant role in the jury's decision.
 

 Conclusion
 

 For the reasons discussed above, we conclude that the trial court did not err by denying defendant's suppression motion and did not commit plain error in its instructions to the jury. Defendant had a fair trial, free of reversible error.
 

 NO ERROR.
 

 Judges DILLON and BERGER, JR. concur.
 

 [1]
 

 On appeal, the State argues that defendant lacked standing to challenge the search warrant, and that he failed to object at trial to the introduction of the evidence that was seized during the search. We conclude that these arguments lack merit and do not require further discussion.